OPINION
{¶ 1} Plaintiff-appellant Shawnee Associates, L.P. ("Shawnee") appeals the April 9, 2007 Judgment Entry entered by the Delaware County Court of Common Pleas, which overruled in part and granted in part Shawnee's Objections to the Magistrate's Decision, adopted the Magistrate's Decision, and granted defendants-appellees Village of Shawnee Hills, et al.'s Motion to Disqualify Plaintiff's Counsel.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Shawnee, an Ohio limited partnership, operates a shopping center in the Village of Shawnee Hills ("the Village"). For a period of time, commencing in the late 1980's, the shopping center and its tenants relied exclusively on a wastewater treatment plant operated by the Delaware County Sanitary Engineer. The Village did not have a sanitary sewer system at that time. However, between 2001, and 2002, the Village completed construction of a sanitary sewer collection system. During this time period, the Ohio EPA issued a letter to the County Engineer, requesting the County abandon the wastewater treatment plant as the facility was in a state of disrepair. The County ceased sewer services to the shopping center sometime in 2003. Shawnee requested a permit to construct a lateral line in order to tap into the Village sewer system. The Village denied the permit.
 {¶ 3} Shawnee filed an action against the Village in Delaware County Court of Common Pleas Case No. 03CV-H-06-418, seeking an injunction, in order to construct the lateral line and tap into the Village system. On June 17, 2003, the Village and Shawnee negotiated, and entered into the record, a "standstill agreement". Pursuant to the agreement, Shawnee funded an escrow account in the amount of $33,749.28, *Page 4 
representing the amount the Village charged it for sewer services; and the Village was required to adjudicate Shawnee's Request for Review within 21 days. On July 8, 2003, the Village rejected and denied Shawnee's Request. The Village subsequently shut off all sewer and water services to Shawnee's tenants in the shopping center.
 {¶ 4} On February 22, 2006, Shawnee filed the Complaint in the instant matter, seeking declaratory judgment and damages. Various answers, counterclaims, and third-party complaints were filed over the course of the next several months. In November, 2006, Shawnee changed counsel from Attorneys E. Joel Wesp and Gregory P. Barwell to Attorney Steven Samuels and the firm of Schottenstein, Zox and Dunn.
 {¶ 5} On December 27, 2006, the Village filed a motion to disqualify Attorney Samuels and his firm, asserting Attorney Samuels had represented the Village from March, 1997, through 1999, and such representation included negotiations with the Cities of Columbus and Dublin for sanitary sewer services. The Village attached the affidavit of the current mayor and former councilperson, Jerry O'Shaughnessy. O'Shaughnessy averred the Village had retained Attny. Samuels to represent its interests during negotiations with the Cities of Columbus and Dublin, and one of the key issues during these negotiations was service to two local businesses, one being the shopping center.
 {¶ 6} Shawnee filed a Memorandum Contra, attaching the affidavit of Stephen Samuels. Attny. Samuels stated, in early 1997, he was engaged as counsel to the Village to assist the Village in building or acquiring a wastewater treatment facility. He further averred, in November, 1999, another attorney was engaged as lead counsel, and his office turned its file over to that attorney. Attorney Samuels added he had *Page 5 
reviewed the file from his representation of the Village, and found nothing therein which would be helpful to Shawnee or detrimental to the Village. Shawnee also attached the affidavit of Kerry Hogan, the vice president of URS Corporation, an environmental consulting firm retained by the Village in 1995. Hogan served as project manager between May, 1998, and 2002, when the system was completed. Hogan stated, to his knowledge, there were no discussions between the Village and Samuels regarding Shawnee or the shopping center, or whether Village ordinances, rules or sewer fees should or would impact Shawnee or the shopping center.
 {¶ 7} The Village filed a reply in support of its motion to disqualify counsel and a motion to strike the Hogan affidavit. Shawnee countered with a memorandum contra the Village's motion to strike, to which the Village responded.
 {¶ 8} The magistrate scheduled an oral hearing on February 7, 2007. Neither the Village nor Shawnee called any witnesses. After the hearing, the parties filed additional briefs and affidavits. The magistrate issued her Findings of Fact and Conclusions of Law on February 16, 2007, recommending Attorney Samuels and his law firm be disqualified. Shawnee filed objections to a number of the magistrate's findings, the procedure utilized by the magistrate, and the conclusions of law. The trial court overruled in part, and sustained in part, Shawnee's objections, but ultimately agreed with the magistrate's recommendation Samuels and his firm be disqualified. The trial court memorialized its ruling via entry filed April 9, 2007.
 {¶ 9} It is from this entry Shawnee appeals, raising the following assignments of error: *Page 6 
 {¶ 10} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DISQUALIFYING ATTORNEY SAMUELS AND HIS LAW FIRM FROM THE REPRESENTATION OF THE SHOPPING CENTER ON THE BASIS THAT THE SUBJECT MATTER OF CASE NO. 06 CV-H-02-156 WAS SUBSTANTIALLY RELATED TO ATTORNEY SAMUELS' EARLIER REPRESENTATION OF THE VILLAGE IN 1997-1999.
 {¶ 11} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CONDUCT AN EVIDENTIARY HEARING THAT ALLOWED FOR THE EXAMINATION AND CROSS-EXAMINATION OF WITNESSES IN ACCORD WITH THE RATIONALE AND MANDATE OF KALA V. ALUMINUM SMELTING REFINING CO., INC. (1998), 81 OHIO ST.3D 1."
 I {¶ 12} In its first assignment of error, Shawnee maintains the trial court erred and abused its discretion by disqualifying Attorney Samuels and his law firm. We disagree.
 {¶ 13} This Court reviews a trial court's decision to disqualify a party's counsel under an abuse of discretion standard. 155 N. High Ltd.V. Cincinnati Ins. Co. (1995), 72 Ohio St.3d 423, 426, 650 N.E.2d 869. An abuse of discretion implies the trial court's attitude in reaching its decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. However, disqualification of an attorney is a drastic measure which should not be imposed unless absolutely necessary. Kala v. AluminumSmelting Refining Co., Inc. (1998), 81 Ohio St.3d 1, 6,688 N.E.2d 258, citing Freeman v. Chicago Musical Instrument Co. (C.A.7, 1982),689 F.2d 715, 721. "Disqualification, therefore, `should ordinarily be granted only *Page 7 
when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint'." Spivey v.Bender (1991), 77 Ohio App.3d 17, 22, 601 N.E.2d 56, quoting Glueck v.Jonathan Logan, Inc. (C.A.2, 1981), 653 F.2d 746, 748.
 {¶ 14} When ruling on a motion for disqualification, a trial court must consider the facts in light of the following three-part test, and determine whether:
 {¶ 15} "(1) A past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." Phillips v. Haidet (1997),119 Ohio App.3d 322, 325, 695 N.E.2d 292, quoting Dana Corp. v. Blue Cross BlueShield Mut. of N. Ohio (C.A.6, 1990), 900 F.2d 882, 889.
 {¶ 16} The test is commonly referred to as the Dana test.
 {¶ 17} The parties do not dispute an attorney/client relationship existed between Samuels and the Village. Accordingly, the first prong of the Dana test has been satisfied.
 {¶ 18} The second prong of the test is whether the subject matter of the relationships are "substantial related." In Cleveland v. ClevelandElec. Illum. Co. (N.D. Ohio 1976), 440 F.Supp.193, the United States District Court, N.D. Ohio, Eastern District held "disqualification should be ordered where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation." Id. at 207. The party moving for disqualification has the burden of affirmatively showing "the former attorney-client relationship involved *Page 8 
matters substantially related to the latter. Absent such affirmative showing, it is axiomatic that no ethical problem results." Id.
 {¶ 19} In Phillips v. Haidet (1997), 119 Ohio App.3d 322, the Third District Court of Appeals, analyzed a number of cases involving attorney disqualification in order to define "substantial relation", and noted:
 {¶ 20} "* * * a commonality of issues must exist for there to be a substantial relation. The moving party has the duty of showing what the connection between the cases is. * * * Further guidance as to the meaning of `substantial relation' can be found by looking at the plain meaning of the words. `Substantial' is defined as `considerable in importance, value, degree, amount, or extent.' American Heritage Dictionary (2 Ed.1985) 1213. `Relation' is defined as `a logical or natural association between two or more things; connection.' Id. at 1043. Taken together, the plain meaning of the phrase implies that the two cases must have a clear connection." Id. at 327.
 {¶ 21} Thus, to have a substantial relationship, there must be a commonality of issues between the prior and present representations, and the factual contexts of the two representations must be similar or related.
 {¶ 22} Shawnee specifically challenges the trial court's finding the subject matter of Attny. Samuels' former representation of the Village is substantially related to the subject matter of his current representation of Shawnee. Shawnee maintains the fact Samuels' representation in both instances involves sewer systems does not render the subject matter "substantially related", arguing Samuels' representation of the Village involved negotiations for sewer service with the Cities of Columbus and Dublin, while *Page 9 
Samuels' representation of Shawnee involves a breach of contract claim. We find Shawnee's argument unconvincing.
 {¶ 23} In his affidavit, Jerry O'Shaughnessy, the current Mayor of the Village, stated he served on Village Council in 1999, during which time the Village was negotiating with the Cities of Columbus and Dublin for a sanitary sewer service contract. O'Shaughnessy added as a result of his position, he was privy to a number of issues related to the negotiations. He noted one of the key issues was the service to two local businesses, one being the shopping center operated by Shawnee. Although the shopping center was being served by another system at the time, that system was in a state of disrepair. During its negotiations with Columbus and Dublin, the Village anticipated serving the shopping center.
 {¶ 24} The Village also submitted the affidavit of Attorney Todd Rogers. In 2000, the Village retained Rogers and his firm to provide legal services relative to the completion of necessary documentation for the Village to obtain financing from the Rural Development Authority ("RDA"). The RDA required the Village to demonstrate a sanitary system would operate in such a manner as to ensure the generation of sufficient revenue to repay the loan. In order to satisfy this condition, the Village enacted a number of ordinances, including a requirement all property owners connect into the system; and established the rules and charges for usage.
 {¶ 25} Rogers stated the attorney who had represented the Village in its negotiations with the Cities of Columbus and Dublin would have or should have known about, and been privy to, engineering designs, estimated construction and operating costs, as well as estimated rates and charges for customers. Rogers added, when he *Page 10 
was retained, the Village's sanitary system was substantially complete and the Village had developed significant and accurate information regarding the aforementioned items.
 {¶ 26} The Village additionally presented the affidavit of Robert Shoaf, a project manager with URS, the consulting firm hired by the Village to develop and oversee the implementation of the sanitary sewer system. Shoaf worked as the project manager for the Village from 1998, through 2002. In that position, Shoaf had daily contact with the Village, its officials, councilpersons, and boards. Shoaf stated, from the time he began working with the Village, URS was aware the shopping center would eventually tap into the Village system, and the shopping center's usage was included in the evaluations and planning done by URS. Shoaf added this issue was openly discussed at Council and Board meetings, and he recalled Attorney Samuels being in attendance at some of those meetings.
 {¶ 27} In support of its position, Shawnee submitted the affidavit of Attorney Samuels. Attorney Samuels stated he reviewed his files of his representation of the Village, and found the file does not contain any information which "relates to the claims and defenses raised by the pleadings in this action"; or which "would, if disclosed, be in any way helpful to [Shawnee]" or "in any way be detrimental to [the Village]". Affidavit of Stephen Samuels at ¶ 7. Attorney Samuels added the scope of his representation of the Village "did not extend to any matter involving or relating to the Village System as it may relate to Shawnee Associates shopping center, Village ordinances, Village rules, tap fees, user fees or service fees charged or proposed" * * * "and no such matters were ever discussed with me." Id. at ¶ 8. *Page 11 
 {¶ 28} The trial court noted Shawnee spent "considerable effort attempting to convince the Court that Attorney Samuels' prior representation of the Village has no connection to the litigation", but was "unconvinced that the two representations have no bearing on each other." April 9, 2007 Judgment Entry at 5.
 {¶ 29} The record reveals the matter initially involved the Village's need to obtain sanitary sewer services and its negotiations with the Cities of Columbus and Dublin, and evolved into the Village researching, developing and constructing its own sewer system. Attorney Samuels was involved during this time. We do not find the trial court abused its discretion in finding the subject matter of the relationships was substantially related, and the fact the nature of the representation — negotiating versus litigating — is not dispositive.
 {¶ 30} With respect to the third prong, Shawnee acknowledges Attny. Samuels "may have acquired confidential information from the Village during his representation", but adds the attorney does not believe he has information helpful to Shawnee or detrimental to the Village.
 {¶ 31} "[W]here an attorney himself represented a client in matters substantially related to those embraced by a subsequent case he wishes to bring against the former client, [he is] irrebuttably presumed to have benefitted from confidential information relevant to the current case. In such limited situations there is no necessity to demonstrate actual exposure to specific confidences which would benefit the present client." City of Cleveland v. Cleveland Elec. Illum. Co.,440 F.Supp. 193, 210, quoting Silver Chrysler Plymouth, Inc. v. Chrysler MotorsCorp. (C.A.2, 1975), 518 F.2d 751. See, also, Stevens, v. GrandviewHospital and Medical Ctr. (Oct. 20, 1993), *Page 12 
Montgomery App. No. 14042, vacated on other grounds (Dec. 7, 1993). ("We may presume that confidences were shared because of the substantial relationship of the subject matter included in the present action and of the area of representation by Menz of his former client.").
 {¶ 32} Shawnee's first assignment of error is overruled.
 II {¶ 33} In its second assignment of error, Shawnee contends the trial court erred in failing to conduct an evidentiary hearing to allow for the examination and cross-examination of witnesses. Shawnee relies upon the Ohio Supreme Court's decision in Kala v. Aluminum Smelting Refining Co., Inc. (1998), 81 Ohio St.3d 1, for the proposition a trial court must hold an evidentiary hearing on a motion to disqualify and must issue findings of fact, if requested, based upon the evidence presented. Id. at 15.
 {¶ 34} We find Shawnee's reliance on Kala, supra, to be misplaced.Kala, supra, involved the disqualification of an attorney who left one firm and joined a firm representing an opposing party (in other words, "side switching"). This "side-switching" scenario is the only instance in which the Supreme Court of Ohio has held an evidentiary hearing is required. The Kala Court specifically held, "in ruling on a motion for disqualification of either an individual (primary disqualification) or the entire firm (imputed disqualification) when an attorney has left a law firm and joined a firm representing the opposing party, a court must hold an evidentiary hearing and issue findings of fact using a three-part analysis * * *" Kala at 13. There is nothing in Kala to suggest an evidentiary hearing is required on all motions to disqualify counsel. See, *Page 13 Harsh v. Kwait (2000), Cuyahoga App. No. 76683; Luce v. Alcox, Franklin App. 04AP-1250, 2005-Ohio-3373.
 {¶ 35} Based upon the foregoing, we find the trial court did not abuse its discretion in not holding an evidentiary hearing on the Village's motion to disqualify counsel.
 {¶ 36} Shawnee's second assignment of error is overruled.
 {¶ 37} The judgment of the Delaware County Court of Common Pleas is affirmed. Hoffman, P.J., Farmer, J. and Delaney, J. concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellants. *Page 1