OPINION *Page 2 
 I. Facts/Procedural History {¶ 1} Plaintiffs-appellants, Mark T. and Carolyn M. Holmer (hereinafter "Mark and Carolyn") appeal the Seneca County Court of Common Pleas money-judgment award in favor of defendants-appellees, John A. and Marvin E. Holmer (hereinafter "John" and "Marvin"), arising from a partnership dissolution and accounting action. Appellants also appeal the trial court's subsequent grant of summary judgment in appellees' favor on their counterclaims. For reasons that follow, we affirm.
 {¶ 2} On January 1, 1986, John, Marvin, and Mark formed a general partnership known as MJM farms pursuant to an oral partnership agreement.[1] Each partner held an equal one-third share of the partnership, and each partner was to contribute an equal capital share to the partnership, although no amount was discussed at that time. The purpose of the partnership was to conduct a farming business utilizing land, equipment, and crops purchased from Leon Holmer, the partners' brother. The partnership also farmed land belonging to Agnes Holmer, the partners' mother, and Norbert Holmer, the partners' uncle. The farming operation was not the primary occupation of any of the partners. *Page 3 
 {¶ 3} In order to begin the farming operation, the partners made initial investments of cash, grain, and equipment; however, the partners' initial contributions were not equal. John contributed $62,600 in equipment; Marvin contributed $17,450 in equipment; and Mark contributed $9,150 in equipment. From 1986 to 2003, MJM farms continued operation and used its profits to pay for the mortgage, taxes, insurance, and improvements on the co-owned parcel of farmland. Over the course of MJM farms' seventeen years of operation, John invested $282,635.77 and received payments of $108,395.64 from the partnership; Marvin invested $68,952.57 and received $2,105.00 from the partnership; and Mark invested $25,466.02 and received $0.00 from the partnership. Each partner gained equal shares of equity in the co-owned farmland.
 {¶ 4} In 2002, John discussed the operation of MJM farms with Mark and told Mark that he would no longer farm with him after 2002 unless he paid his one-third share of the partnership capital. On October 15, 2002, Mark and Carolyn filed a lawsuit for partition of the co-owned farmland. (Doc. No. 2). On December 2, 2002, Mark and Carolyn filed a motion for summary judgment as to the partition action. (Doc. No. 19). On December 18, 2002, John and Marvin filed a counterclaim seeking an accounting of the partnership. (Doc. No. 21). On January 13, 2003, Mark and Carolyn filed their reply to the counterclaim seeking dissolution of the partnership. (Doc. No. 22). On February 7, 2003, the trial court *Page 4 
denied Mark and Carolyn's motion for summary judgment and set the matter for trial. (Doc. No. 25).
 {¶ 5} On May 8, 2003, the trial court appointed Rex Felton, CPA, as Special Commissioner to aid the court with the partnership dissolution and accounting. (Doc. No. 40). It further ordered that John and Marvin continue to farm the land at issue and ordered Owen Reed, MJM's tax preparer, to provide the court with MJM's 2002 tax returns. On June 2, 2003, Mark and Carolyn filed an amended reply to John and Marvin's counterclaim seeking an accounting of MJM farms and asserting the following claims: (1) breach of fiduciary duty; (2) excessive control of the partnership; and (3) failure to file accurate income tax returns. (Doc. No. 46).
 {¶ 6} On May 18, 2004, the trial court entered judgment granting Mark and Carolyn's request for partition of the farmland, and ordered that a writ issue to the Seneca County Sheriff to select three disinterested parties to determine if the farmland could be equally partitioned physically. (Doc. No. 72). It was determined that the farmland could not be equally partitioned; and thus, the trial court ordered it sold with the proceeds to be equally divided. Rather than allow the land to be sold, on August 25, 2004, John and Marvin elected to purchase the farmland. (Doc. Nos. 85, 95). *Page 5 
 {¶ 7} The partnership dissolution and accounting action came on for trial March 7, 9, 16 of 2005; April 1, 11, 13, 18 of 2005; May 3, 10, 23, 24, 26 of 2005; June 23, 2005; July 18, 2005; August 16, 22, 23, 31 of 2005; September 7, 12, 19, 28 of 2005; November 7, 2005; December 8 9 of 2005; January 11 31 of 2006; and February 1, 13, 15, 23, 27 of 2006.
 {¶ 8} On November 20, 2006, the trial court issued its decision with findings of facts and conclusions of law. (Doc. No. 200). The trial court first concluded that the partnership was dissolved "at the end of calendar year 2002" as a result of the partners' expressed will to terminate the partnership. (Nov. 20, 2006 Journal Entry at ¶ 41). The trial court also concluded that, in order to equalize the capital investment of the partners, Mark and Carolyn must pay $63,362.04 to John and Marvin. (Id. at ¶ 48; Schedule A, attached to Journal Entry).[2]
However, the trial court concluded that Mark and Carolyn owned a one-third interest, or $28,458.33, in the partnership's remaining property. (Id. at ¶ 48). As a result, the trial court concluded that if John and Marvin elect to receive the partnership property, then Mark and Carolyn's liability should be reduced by their share of the property's value, leaving their total liability at $34,903.71. (Id.). If John and Marvin did not elect to receive the partnership property, then Mark and Carolyn's *Page 6 
share would be reduced by one-third of the net proceeds from an auction of the property. (Id.).
 {¶ 9} On February 7, 2007, John and Marvin filed a notice of election for the partnership property with the trial court. (Doc. No. 212). On that same day, the trial court ordered that all remaining partnership property be transferred to John and Marvin and that Mark and Carolyn's liability to the partnership be reduced to $34,903.71 ($63,362.04 minus $28,458.33). (Doc. No. 213).
 {¶ 10} On January 17, 2007, a pre-trial conference was held as to Mark and Carolyn's remaining counterclaims. Apparently during this conference, the trial court judge revealed to the parties' counsel that he had consulted documents outside the record prior to his November 20, 2006 entry.[3] On January 31, 2007, Mark and Carolyn filed a motion for evidentiary and procedural hearing for the purposes of determining:
 (1) whether there is any information in the John Holmer domestic relations files that is material and relevant to the partnership accounting;
 (2) whether there is any legitimate reason for plaintiff's counsel to be disqualified from prosecuting the remainder of this case; and *Page 7 
 (3) whether there are any other procedural and/or evidentiary matters that must be addressed now, so this case may be resolved meritoriously.
(Motion for Evidentiary and Procedural Hearing, Doc. No. 211). On February 27, 2007, John and Marvin filed a response seeking disqualification of plaintiffs' counsel. (Doc. No. 214). The trial court, however, took no action on the motion or the response.
 {¶ 11} On May 15, 2007, John and Marvin filed a motion for summary judgment on Mark and Carolyn's remaining counterclaims. (Doc. No. 229). On June 13, 2007, Judge Wittenberg was assigned to the case by the Ohio Supreme Court, effective May 23, 2007. (Doc. No. 235). On June 19, 2007, Mark and Carolyn filed a motion in opposition to summary judgment. (Doc. No. 236). On September 6, 2007, the trial court granted John and Marvin's motion for summary judgment. (Doc. No. 241).
 {¶ 12} On September 27, 2007, Mark and Carolyn filed a notice of appeal to this Court asserting four assignments of error for review. (Doc. No. 242). We have elected to combine Mark and Carolyn's assignments of error where appropriate.
 II. Standard of Review {¶ 13} We review a decision to grant summary judgment de novo. Doe v.Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citingGrafton v. Ohio *Page 8 Edison (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is proper where: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ. R. 56(C); Grafton, 77 Ohio St.3d at 105, citingState ex rel. Cassels v. Dayton City School Dist. Bd. of Edn. (1994),69 Ohio St.3d 217, 219, 631 N.E.2d 150.
 {¶ 14} Material facts are those facts "that might affect the outcome of the suit under the governing law." Turner v. Turner (1993),67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present `a sufficient disagreement to require submission to a jury' or is it `so one-sided that one party must prevail as a matter of law[?]'" Id., citing Liberty Lobby, Inc., 477 U.S. at 251-52.
 {¶ 15} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. Perez v. Scripts-HowardBroadcasting Co. (1988), 35 Ohio St.3d 215, 217, 520 N.E.2d 198. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." Lakota Loc. SchoolsDist. Bd. of Edn. v. Brickner (1996), 108 Ohio App.3d 637, 643,671 N.E.2d 578. *Page 9 
 III. Analysis ASSIGNMENT OF ERROR NO. I THE TRIAL COURT'S (JUDGE MICHAEL P. KELBLEY) NOVEMBER 20, 2006 JUDGMENT ENTRY CONTAINS FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT GO BEYOND THE SCOPE OF THE ACCOUNTING PHASE OF THIS CASE AND ARE NOT SUPPORTED BY THE FACTS PRESENTED AT THE TRIAL IN THIS CASE BY THE SPECIAL MASTER, THE PARTNERSHIP ACCOUNTANT AND THE DOCUMENTS CREATED BY JOHN HOLMER.
 {¶ 16} In their first assignment of error, Mark and Carolyn argue that the trial court's November 20, 2006 entry contained findings of fact and conclusions of law that are not supported by the evidence. John and Marvin, however, argue that Mark and Carolyn have failed to provide this Court with an adequate record on appeal pursuant to App. R. 9(B); and therefore, this Court must assume regularity of the trial court proceedings and affirm. We agree with John and Marvin.
 {¶ 17} The party asserting error in the trial court proceedings has the burden to demonstrate the error by reference to the record on appeal. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199,400 N.E.2d 384; App. R. 9(B). App. R. 9(B) provides that:
 If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record *Page 10 a transcript of all evidence relevant to the findings or conclusion.
"An appellant may not attempt to shift the burden onto the appellee by filing only portions of the trial record and claiming an insufficiency of evidence on some issue." Hartt v. Munobe (1993), 67 Ohio St.3d 3, 7,615 N.E.2d 617, citing App. R. 9(B); Ostrander v. Parker-FallisInsulation Co. (1972), 29 Ohio St.2d 72, 278 N.E.2d 363. Furthermore, the Ohio Supreme Court has instructed that:
 [w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.
Knapp, 61 Ohio St.2d at 199. See also, State v. Spencer, 3d Dist. No. 17-07-05, 2008-Ohio-164, ¶ 8.
 {¶ 18} In the case sub judice, Mark and Carolyn argue that the trial court's findings of fact and conclusions of law are not supported by the evidence presented; however, they have only provided this Court with a portion of the record. The trial court's November 20, 2006 entry followed a thirty-two (32) day trial, which took place over the course of almost one year. (Nov. 20, 2006 Journal Entry). Mark and Carolyn cannot shift their burden of demonstrating error onto appellees John and Marvin by only providing a portion of the transcript. Hartt,67 Ohio St.3d at 7. Since Mark and Carolyn have failed to provide this Court with "a transcript of all evidence relevant to the findings or conclusion," we must assume *Page 11 
regularity of the proceedings below and affirm. App. R. 9(B);Knapp, 61 Ohio St.2d at 199; Spencer, 2008-Ohio-164, at ¶ 8. Even if the evidence in the appellate record does not support the trial court's findings, as Mark and Carolyn argue, we presume that the evidence not submitted into the appellate record supports the trial court's findings.Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 409, 629 N.E.2d 500.
 {¶ 19} For these reasons, Mark and Carolyn's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT'S (JUDGE CHARLES S. WITTENBERG) SEPTEMBER 20, 2007 [SIC] JUDGMENT ENTRY WAS FOUNDED UPON THE FAULTY JUDGMENT ENTRY (JUDGE MICHAEL P. KELBLEY) OF NOVEMBER 20, 2006, THE DOCUMENT [SIC] OF COLLATERAL ESTOPPEL AND DID NOT ADDRESS ANY OF THE MATERIAL ISSUES SET FORTH IN THE MOTION FOR SUMMARY JUDGMENT THE RESPONSIVE BRIEF AND FIVE (5) AFFIDAVITS.
 {¶ 20} In their third assignment of error, Mark and Carolyn argue that since the trial court's September 6, 2007 grant of summary judgment relied upon the faulty November 20, 2006 entry, the September judgment was also in error. John and Marvin, on the other hand, argue that because this Court must overrule Mark and Carolyn's first assignment of error and their third assignment of error is *Page 12 
related to their first, this Court must, likewise, overrule Mark and Carolyn's third assignment of error. We agree with John and Marvin.
 {¶ 21} Mark and Carolyn's third assignment of error is a corollary to their first assignment of error. Since Mark and Carolyn have failed to show that the trial court's November 20, 2006 entry contained inaccurate findings of fact or conclusions of law, the premise of their argument in support of their third assignment of error is now without merit.
 {¶ 22} Mark and Carolyn's third assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT (JUDGE CHARLES S. WITTENBURG) FAILED TO CONDUCT THE EVIDENTIARY AND PROCEDURAL HEARING REQUESTED BY THE PLAINTIFFS, WHICH WAS THE REASON THE TRIAL COURT (JUDGE MICHAEL P. KELBLEY) RECUSED HIMSELF FROM THESE PROCEEDINGS AND REQUESTED ANOTHER JURIST BE APPOINTED BY THE OHIO SUPREME COURT TO COMPLETE THIS CASE.
 {¶ 23} In their second assignment of error, Mark and Carolyn argue that the trial court erred in failing to hold an evidentiary/procedural hearing for the purposes of determining: (1) whether any evidence allegedly viewed by Judge Kelbley outside the record impacted his November 20, 2006 entry; (2) whether their attorney had a conflict of interest with appellee John; and (3) whether any evidentiary/procedural issues still existed that must be addressed so that the case *Page 13 
may be resolved meritoriously. (Motion for Evidentiary and Procedural Hearing, Doc. No. 211).
 {¶ 24} John and Marvin, on the other hand, argue that Mark and Carolyn have failed to provide any evidence that Judge Kelbley actually viewed evidence outside of the record. They further argue that Mark and Carolyn's attorney should have terminated his representation, but the fact that he failed to do so does not create a "genuine issue of material fact" for summary judgment purposes. They also argue that Mark and Carolyn's request for an evidentiary/procedural hearing was unnecessary because John's divorce records were public, and the trial court lacked jurisdiction to hold a hearing on the conflict of interest. We agree with John and Marvin that the trial court did not err in failing to grant an evidentiary hearing in this case.
 {¶ 25} A trial court has inherent authority to supervise members of the bar appearing before it; this authority includes the power to disqualify counsel in specific cases. Kala v. Aluminum Smelting Refining Co., Inc. (1998), 81 Ohio St.3d 1, 4, 688 N.E.2d 258, citingMorgan v. N. Coast Cable Co. (1992), 63 Ohio St.3d 156, 161,586 N.E.2d 88. A trial court, however, is not required to hold a hearing on every motion to disqualify counsel on the basis of a conflict of interest.Shawnee Assoc, L.P. v. Shawnee Hills, 5th Dist. No. 07CAE050022,2008-Ohio-461, ¶ 34 (finding that Kala, supra, stands for the proposition that a trial court must *Page 14 
hold an evidentiary hearing on "side-switching" cases, not all cases);Harsh v. Kwait (Oct. 5, 2000), 8th Dist. No. 76683, at *3-4; Luce v.Alcox, 10th Dist. No. 04AP-1250, 2005-Ohio-3373, ¶ 6. We review a trial court's denial of a motion for an evidentiary hearing to determine whether a conflict of interest exists under an abuse of discretion standard. Shawnee Hills, 2008-Ohio-461, at ¶ 35; Harsh, 8th Dist. No. 76683, at *3-4; Luce, 2005-Ohio-3373, at ¶ 6. An abuse of discretion is more than an error in judgment; it connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 26} Mark and Carolyn filed their motion for an evidentiary/procedural hearing on January 31, 2007. (Motion for Evidentiary and Procedural Hearing, Doc. No. 211). On February 27, 2007, John and Marvin filed a response seeking disqualification of plaintiffs' counsel. (Doc. No. 214). The trial court, however, took no action on the motion; therefore, we must presume that the trial court overruled the motion. Howick v. Lakewood Village Ltd. Partnership, 3d Dist. No. 10-06-25, 2007-Ohio-4370, ¶ 36.
 {¶ 27} Upon review of the record, we cannot conclude that the trial court abused its discretion in overruling the motion for an evidentiary/procedural hearing. To begin with, we fail to see how Mark and Carolyn suffered any prejudice by the trial court's denial of the motion with respect to Attorney John *Page 15 
Barga's alleged conflict of interest. Since the trial court failed to hold a hearing, Mark and Carolyn were permitted Attorney Barga's continued counsel, even though Barga may have had confidential information. Far from prejudice, the trial court's denial of the hearing may have actually benefited Mark and Carolyn to the detriment of John and Marvin.
 {¶ 28} Furthermore, even assuming that the trial court examined evidence outside the record, there is nothing in the record to suggest it impacted the trial court's November 20, 2006 entry. In fact, according to Mark and Carolyn, the trial court allegedly reviewed the evidence for the purposes of determining: (1) whether Tina Holmer, John's ex-wife, should have been a party to the proceedings; and (2) whether there existed a conflict of interest between Attorney Barga and appellee John. (Motion for Evidentiary and Procedural Hearing, Doc. No. 211). How this limited review would have impacted the November 20, 2006 entry is questionable, and Mark and Carolyn do not offer any evidence or arguments as to how, if at all, the entry was impacted. This Court declines Attorney Barga's offer to join him afield while snipe hunting.
 {¶ 29} Mark and Carolyn's second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IV THE TRIAL COURT (JUDGE MICHAEL P. KELBLEY) FAILED TO MAKE A COMPLETE RECORD OF THE TRIAL *Page 16 COURT PROCEEDINGS, WHICH UNFAIRLY DENIES APPELLANT HIS SUBSTANTIVE AND PROCEDURAL DUE PROCESS, WHICH ULTIMATELY PRECLUDES HIM FROM EXERCISING HIS FULL RIGHT TO AN APPEAL.
 {¶ 30} In their fourth and final assignment of error, Mark and Carolyn argue that the trial court denied their substantive and procedural due process rights by failing to make a complete record of the trial court proceedings. Specifically, Mark and Carolyn argue that the trial court's proceedings are on parts of thirty-five (35) lengthy tape cassettes that would have cost them $15,000 to dissect and transcribe. John and Marvin argue that the trial court did make a compete record, but Mark and Carolyn did not want to pay the large fee to create the record for appeal. John and Marvin further argue that the high cost of preparing a transcript for appeal does not violate Mark and Carolyn's due process rights. We agree with John and Marvin.
 {¶ 31} Mark and Carolyn's arguments lack merit for two important reasons. First, procedural due process does not require that the trial court create a perfect record but only an adequate record for appeal. See e.g. State v. Palmer (1997), 80 Ohio St.3d 543, 553, 687 N.E.2d 685
("the requirement of a complete, full, and unabridged transcript in capital trials does not mean that the trial record must be perfect for purposes of appellate review."). The record in this case was available to Mark and Carolyn but, for financial reasons, they declined to transcribe the *Page 17 
entire proceedings. As such, we cannot say the trial court deprived Mark and Carolyn of their right to procedural due process.
 {¶ 32} Second, Mark and Carolyn could have filed a narrative statement pursuant to App. R. 9(C) if they were unable to afford a transcript.State ex rel. Motley v. Capers (1986), 23 Ohio St.3d 56, 491 N.E.2d 311
("a transcript is unavailable for the purposes of App. R. 9(C) to an indigent appellant unable to bear the cost of providing a transcript" in civil actions). Since Mark and Carolyn have failed to file an App. R. 9(C) statement in lieu of a transcript, they have now waived their alleged error. Steiner v. Steiner (1993), 85 Ohio App.3d 513, 524,620 N.E.2d 152, citing State v. Brewer (1990), 48 Ohio St.3d 50, 61,549 N.E.2d 491.
 {¶ 33} For these reasons, Mark and Carolyn's fourth assignment of error is overruled.
 {¶ 34} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, J.J., concur.
[1] The recitation of facts provided herein was gleaned from the trial court's Nov. 20, 2006 entry's findings of fact. (Doc. No. 200).
[2] At ¶ 42 of the Nov. 20, 2006 entry, the trial court states that Mark and Carolyn must pay $63,930.48 to John and Marvin to equalize his one-third share. We, however, believe this to be a typographical error, because the amount found in Schedule A, which the trial court incorporated into its entry provides that Mark and Carolyn's contribution is $63,362.04. This later amount is also used by the court in its calculations appearing later in its entry at ¶ 48.
[3] We use the word "apparently" because it is unclear from the record exactly what occurred during the January 17, 2007 pre-trial conference. The trial court judge allegedly examined at least one domestic relations file not part of the record to determine if: (1) Tina Holmer, John's ex-wife, should have been a party to the proceedings; and (2) whether there existed a conflict of interest between plaintiff's counsel and defendant John Holmer. (See Motion for Evidentiary and Procedural Hearing, Doc. No. 211). *Page 1