KITTS et al., Appellants,

v.

U.S. HEALTH CORPORATION OF SOUTHERN OHIO et al., Appellees.

[Cite as *Kitts v. U.S. Health Corp. of S. Ohio* (1994), 97 Ohio App.3d 271.]

Court of Appeals of Ohio,
Scioto County.

No. 94 CA 2214.

Decided Sept. 29, 1994.

---

*Wolske & Blue* and *Michael S. Miller*, for appellants.

*Bannon, Howland & Dever* and *Robert E. Dever*, for appellees U.S. Health Corporation of Southern Ohio and Robert M. Dale.

*McCurdy, Johnson, Ruggiero, McKenzie & Bender* and *Daniel P. Ruggiero*, for appellee Richard Murphy.

*Campbell, Woods, Bagley, Emerson, McNeer & Herndon* and *Christopher A. Conley*, for appellee Life Ambulance Service.

---

GREY, Judge.

This is an appeal from a judgment of the Common Pleas Court of Scioto County. After the death of her infant daughter, Molly, Teresa Kitts instituted a suit based on medical malpractice and wrongful death. On the day the trial was to begin, the defendants moved for disqualification of Kitts's chosen counsel, the law firm of Wolske and Blue. The motion was based on ethical considerations. The court granted the motion and disqualified trial counsel as well as all partners and associates of the law firm of Wolske and Blue. We reverse.

Molly Kitts, a Down's Syndrome child and daughter of Teresa Kitts, died after receiving medical treatment. On August 5, 1991, Teresa Kitts, as a result of Molly's death, filed a complaint based in medical malpractice and wrongful death. The named defendants were U.S. Health Corporation of Southern Ohio, d.b.a. Scioto Memorial Hospital, Robert M. Dale, M.D., Richard Murphy, M.D., Mac-Donald–Murphy Pediatrics, William Buente, M.D., Ting L. Liu, M.D., Ting L. Liu, M.D., Inc., Paul J. Roesler, Jr., M.D., Life Ambulance Service, and assorted John Does, *i.e.*, people and corporations related to the care of Kitts's daughter whose alleged negligence contributed to Molly's death. The complaint was filed by the firm of Wolske and Blue, counsel for the plaintiffs. David Shaver, an attorney with Wolske and Blue, was acting as lead counsel.

The named defendants answered with a general denial and argued that the plaintiffs had assumed an obvious risk, that the court lacked jurisdiction, that the statute of limitations had run, that the plaintiffs had been contributorily negligent, and that the plaintiff had assumed a portion of the risk.

Dr. Liu was represented by Joseph F. Elliott of Porter, Wright, Morris & Arthur ("Porter Wright"). Sometime in March 1993, Mary Ellen Spirito, formerly with Porter Wright, joined the firm of Wolske and Blue. On May 24, 1993, Spirito was officially added as counsel of record for the plaintiffs in this case. On that same day, plaintiffs voluntarily dismissed Dr. Liu and Ting L. Liu, M.D., Inc., as defendants.

On August 17, 1993, Dr. Robert Dale, Dr. Paul J. Roesler, Jr., Dr. William L. Buente, and Portsmouth Radiologists, Inc., were also voluntarily dismissed as defendants. On September 29, 1993, Anne M. Valentine of Wolske and Blue was added as counsel of record in place of Walter J. Wolske, Jr.

The final pretrial conference was scheduled for November 1, 1993, at 8:30 a.m., and trial to jury was scheduled to commence immediately thereafter, at 9:00 a.m. At the pretrial conference, Robert Dever, counsel for U.S. Health Corporation of Southern Ohio, orally moved to disqualify Spirito, Valentine, and all partners and associates of the law firm of Wolske and Blue. His motion was based on Spirito's former affiliation with Porter Wright, counsel for Dr. Liu, who was no longer a party. Upon motions by all parties, a continuance was granted, and the court ordered that memoranda be submitted addressing the issue of disqualification.

Counsel for the defendants seeking disqualification said they had consulted with Elliott about the case and discussed their respective defense strategies. They expressed concern that Spirito might have learned something through Elliott which would compromise their positions.

In her memorandum, Spirito said that as soon as she realized there might be a conflict of interest, she contacted Elliott, Dr. Liu's counsel, at Porter Wright. She supplied an affidavit from Elliott to the effect that, while she was at Porter Wright, Spirito did not work on the case and that he had not discussed any information regarding Dr. Liu or the remaining defendants with her. Spirito also said Dr. Liu, and other defendants, were voluntarily dismissed because, in the opinion of her expert witnesses, they were either not negligent or their negligence was not the proximate cause of Molly Kitts's death. Spirito concluded by arguing that, since she had represented Kitts for several months prior to the date of trial, the eleventh-hour tactic of the defense constituted not merely bad faith but a waiver of their right to object.

On January 11, 1994, the court filed its judgment entry. The court disqualified Spirito and all partners and associates of Wolske and Blue from further partic-

ipation in the case. Kitts timely filed a notice of appeal and assigns the following error.

ASSIGNMENT OF ERROR

"The trial court erred to the substantial prejudice of plaintiffs-appellants in disqualifying their chosen counsel from representing them in this action."

When reviewing the disqualification of a party's chosen counsel we apply an abuse of discretion standard. *Centimark Corp. v. Brown Sprinkler Serv., Inc.* (1993), 85 Ohio App.3d 485, 620 N.E.2d 134, syllabus; *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379; *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617. In order to support a charge of abuse of discretion, a party must show that the trial court's decision was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 569 N.E.2d 875.

In *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252, the court described abuse of discretion in the following terms:

" ' "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *" ' "

The disqualification of counsel is a drastic measure. A violation of the Code of Professional Responsibility, alone, should not result in disqualification, unless it is absolutely necessary. Furthermore, disqualification should not be based solely upon allegation of a conflict of interest. Even if the requested disqualification is allegedly based on ethical considerations, the party moving for disqualification still bears the burden of demonstrating the need to disqualify counsel. When the moving party cannot demonstrate the necessity to disqualify counsel, disqualification is improper. *Centimark*, syllabus.

In *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio* (C.A.6, 1990), 900 F.2d 882, at 889, the United States Sixth Circuit Court of Appeals advanced a three-part test for disqualification of counsel. First, a past attorney-client relationship must have existed between the party seeking disqualification and the attorney he wishes to disqualify. Second, the subject matter of the past

relationship must have been substantially related to the present case. Finally, the attorney must have acquired confidential information from the party seeking disqualification.

■ None of the objecting defendants had been represented by Porter Wright. While the subject matter of the suit against Dr. Liu was substantially the same as the suit against the remaining defendants, Dr. Liu was no longer a party to the suit. There were allegations that Spirito *may* have acquired confidential information, but there was nothing to substantiate this allegation.

■ The moving parties must be considered a stranger to the attorney-client relationship between Dr. Liu and Porter Wright. As a general rule, a stranger to an attorney-client relationship lacks standing to complain of a conflict of interest in that relationship. *Morgan v. N. Coast Cable Co.* (1992), 63 Ohio St.3d 156, 586 N.E.2d 88. The appellees distinguish *Morgan* because here, unlike *Morgan,* there is common ground pertaining to all the named defendants. We find their argument unpersuasive.

Here, the moving parties fail the three-prong test of *Dana Corp.* We begin by noting that the disqualification was based on Spirito's former association with Porter Wright while that firm was representing Dr. Liu. The defendants assert that while at Porter Wright, Spirito might have had access to some information regarding the defense strategy of Dr. Liu. Since counsel for the other defendants discussed certain defense tactics with Elliott, he might have divulged information about the case to Spirito, who, in turn, might use that information to the detriment of their clients.

The moving defendants made no allegation that any of this actually happened, but merely cited the relationship as making this possible. In contravention to this claim, the record contains an affidavit from Elliott stating that Spirito was not involved with Dr. Liu's case in any way and that he did not discuss the case with her.

Here, as is typical in medical malpractice and wrongful death cases, the complaint names every possible defendant. In turn, each defendant denies culpability, or perhaps points the finger at all the other defendants in an effort to either be dismissed from the case or to minimize liability. All the named defendants occupy a common status of being adverse to the plaintiff, but it would be a stretch to assert that they shared a commonality of interest. It may well be, given the facts in a particular case, that codefendants do share a common interest and counsel for one of them ought not be allowed to undermine the integrity of the lawyer-client relationship by becoming counsel for the other side. In another case, however, while their common goal is to totally escape liability, their individual goal may be to reduce their liability by placing the blame on the other

named defendants. Therefore, the interests of each named defendant are adverse to the interests of all other defendants.

The appellees do not argue that there actually was a common interest between them and Dr. Liu, but only that the proximity of Dr. Liu's dismissal and Spirito's appearance as counsel in the case gives the appearance of impropriety. The appearance of impropriety, with nothing more, is, as a matter of law, insufficient to warrant disqualification.

Appellants argue that appellees waived any objection to Wolske & Blue and Spirito's representation by failing to raise the issue until the very day of trial. Confidentiality is a paramount principle of the law, almost as basic as jurisdiction, and like jurisdiction, it ought to be a matter that can be raised at any time and one in which the doctrine of waiver is used sparingly. We do not find that appellees waived their right to object to a breach of the confidential relationship. We do find that the timing of the objection on the day of trial, almost six months after the alleged breach occurred, when coupled with the lack of any substantive claim, goes to the weight of the claim. Where a party is fully aware of a possible conflict of interest but does not seek to have the trial court to consider the conflict at a time when the conflict may be resolved and the matter can proceed to trial, the party does not lose the right to assert the conflict, but the court ought to consider the delay in evaluating the validity and bona fides of the claim.

We have reviewed the record and find no specific information imparted from any of the moving parties on which to grant a disqualification. The appellees did not meet the three-prong test of *Dana Corp.* and there is nothing in the record, save the allegation, upon which to base a disqualification. There is no showing of harm to the appellees. The timing of the motion for disqualification militates against its validity. The trial court erred in granting the motion to disqualify.

Kitts's assignment of error is well taken and is sustained. The judgment of the trial court is reversed and this case is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs.

PETER B. ABELE,, J., concurs in judgment only.