PHILLIPS, Appellant,

v.

HAIDET, Appellee.

[Cite as *Phillips v. Haidet* (1997), 119 Ohio App.3d 322.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–96–22.

Decided April 24, 1997.

*John F. Cannizzaro,* for appellant.

*Marc S. Triplett* and *Luigia Tenuta,* for appellee.

---

THOMAS F. BRYANT, Judge.

This appeal, submitted on the accelerated calendar, is being considered pursuant to App.R. 11.1(E) and Loc.R. 12. Pursuant to Loc.R. 12(5) we elect to render decision by written opinion.

Plaintiff-appellant Deanna Phillips filed a complaint against defendant-appellee Craig Haidet on June 7, 1996. The complaint alleged that Haidet had unlawfully entered Phillips's home and hidden a recording device to record private conversations. Haidet then allegedly published these conversations as well as other false and defamatory statements that Phillips was a drug user and a prostitute.

Phillips brought this action against Haidet on the grounds of invasion of privacy, defamation, and the intentional infliction of emotional distress.

On August 1, 1996, Haidet filed an answer denying the allegations in the complaint. Haidet also claimed the defenses of truth, mistaken belief, lack of malice, privilege, assumption of the risk, consent, incompetency, or incapacity. In addition, Haidet claimed that Phillips's complaint violated Civ.R. 11 because it was filed by John Cannizzaro whose firm, Cannizzaro, Fraser & Bridges ("CFB"), had represented Haidet in a prior action.

On August 5, 1996, Haidet filed a motion to disqualify Cannizzaro on the grounds that CFB had represented Haidet in a personal injury case in 1989. That case was based upon what is commonly referred to as whiplash. Haidet claimed that this gave Cannizzaro access to confidential medical and psychological records. In addition, Haidet claimed that CFB acquired personal information about him.

After a hearing, the trial court granted the motion to disqualify on October 14, 1996, holding that to allow Haidet's former attorney to represent Phillips presently would have the appearance of an impropriety. On November 1, 1996, Phillips filed this appeal.

This appeal presents one assignment of error:

"The trial court erred in disqualifying Phillips' counsel of choice."

The trial court has wide discretion in the consideration of a motion to disqualify counsel. *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 601 N.E.2d 56. Absent an abuse of discretion, the trial court's determination will not be reversed. *Cleveland v. Cleveland Elec. Illum. Co.* (N.D.Ohio 1976), 440 F.Supp. 193. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.

"Issues of disqualification of counsel for conflicts arising as a result of former representation present the acutely sensitive dilemma of protecting the confidentiality of the client-attorney relationship without needlessly interfering with a litigant's freedom to proceed with legal counsel of choice." *Cleveland,* 440 F.Supp. at 195. Disqualification of an attorney "is a drastic measure which should not be imposed unless absolutely necessary." *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 22, 601 N.E.2d 56, 59. Thus, when making a decision, the court must rely upon a thorough consideration of the facts. *Cleveland,* 440 F.Supp. at 196. A three-part test is used to determine whether counsel should be disquali-

fied for having, at an earlier time, served as counsel for an adverse party in the current matter. The test is whether "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio* (C.A.6, 1990), 900 F.2d 882, 889.

In this case, there is no doubt that a prior attorney-client relationship existed between Haidet and CFB. Cannizzaro admitted in his testimony at the hearing that Robert Bridges, a partner in CFB, had served as co-counsel in Haidet's personal injury suit. Haidet testified that CFB had filed an action for him at the request of Haidet's counsel of choice. Haidet also testified that he thought Bridges was his attorney even though he had hired another attorney who brought CFB into the case and who divided fees with CFB. There is no doubt that Haidet is a former client of CFB. His suit was settled in 1990, and he has not employed CFB since then. Thus, the first prong of the test is met.

The third prong of the test is also met. As a matter of law, the disclosure of confidences to one's attorney can be presumed and need not be proven by the moving party. *Cleveland,* 440 F.Supp. at 209. However, the presumption is rebuttable. *Id.*

"Only where an attorney himself represented a client in matters substantially related to those embraced by a subsequent case he wishes to bring against the former client, is he irrebuttably presumed to have benefitted from confidential information relevant to the current case. In such limited situations there is no necessity to demonstrate actual exposure to specific confidences which would benefit the present client. But * * * in a case 'where the attorney may be "vicariously disqualified" (as by virtue of his former membership in a law partnership), the inference is treated as rebuttable.'" *Id.* at 210, quoting *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (C.A.2, 1975), 518 F.2d 751.

Here, Cannizzaro admits that through CFB's representation of Haidet, access was given to confidential medical files connected with the whiplash case. By admitting to the exchange of confidential information, the third prong of the disqualification test is satisfied.

The second prong of the test is that the cases have a "substantial relation." Several courts have reviewed this issue. The primary case is *Cleveland.* The court held that "disqualification should be ordered where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation." *Id.,* 440 F.Supp at 207. The party moving for disqualification has the burden of affirmatively showing that "the

former attorney-client relationship involved matters substantially related to the latter. Absent such affirmative showing, it is axiomatic that no ethical problem results." *Id.* "Unfortunately, the cases furnish no applicable guess as to what creates a 'substantial' relationship." *Id.* at 208. "A survey of cases cited in *Silver Chrysler* disclosed that disqualification was ordered only under circumstances where the relationship between subsequent and former representations was 'patently clear.' 518 F.2d at 754." 440 F.Supp. at 208. To have a patently clear relationship, there must be some commonality of issues. *Id.* at 209.

In *Centimark Corp. v. Brown Sprinkler Serv.* (1993), 85 Ohio App.3d 485, 620 N.E.2d 134, the defendant sought to disqualify the plaintiff's counsel because that attorney had previously represented the business and had learned confidential information concerning the business operation. The trial court granted the disqualification, stating that "it is reasonable to conclude that this information could have a bearing on or pose some advantage for Kilgore or some disadvantage to Centimark in the matter at hand." *Id.* at 487, 620 N.E.2d at 136. The court of appeals, however, reversed this decision. The appellate court held that "a former client must demonstrate the existence of a confidence or secret, and that the knowing use of such confidence or secret would work to the former client's disadvantage." *Id.* at 488, 620 N.E.2d at 136. Without this showing, the court held that disqualification was not necessary. "[A] violation of the Code of Professional Responsibility alone should not result in a disqualification, unless disqualification is found to be absolutely necessary." *Id.* at 488–489, 620 N.E.2d at 137. The appellate court went on to state that absent some evidence showing a substantial relation between the two causes of action, the trial court abused its discretion by granting the motion to disqualify counsel. *Id.* at 489, 620 N.E.2d at 136–137.

In *Kitts v. U.S. Health Corp.* (1994), 97 Ohio App.3d 271, 646 N.E.2d 555, Kitts filed a wrongful death suit against a hospital. The hospital moved to disqualify Kitts's counsel because she had formerly been associated with the law firm that represented a defendant previously dismissed from the action. The hospital claimed that they had discussed the case with the attorney's prior firm while the attorney was there and the attorney might have learned confidential information. The trial court agreed and disqualified Kitts's attorney and the firm. However, the court of appeals reversed the decision, citing lack of evidence of an ethical violation. The appellate court ruled that without evidence that a breach of confidence had occurred, the mere allegation that such a breach is possible is insufficient to support a decision to disqualify counsel. *Id.* at 276, 646 N.E.2d at 558–559.

In *Spivey v. Bender, supra,* 77 Ohio App.3d 17, 601 N.E.2d 56, a law firm represented a man in defense of the criminal case resulting from an auto accident

in which his wife was killed. After the man was convicted, the firm accepted the representation of the dead wife's children in a wrongful death civil suit against its former client. These two cases clearly had a "substantial relation," and the trial court disqualified the firm from representing the children. The court of appeals reversed the disqualification on grounds of a waiver. The court held that even though the appearance of impropriety violated the ethical considerations, the disqualification was still inappropriate. "Disqualification, therefore, 'should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint.' " *Id.* at 22, 601 N.E.2d at 59, quoting *Glueck v. Jonathan Logan, Inc.* (C.A.2, 1981), 653 F.2d 746, 748.

In *Stevens v. Grandview Hosp. & Med. Ctr.* (Oct. 20, 1993), Montgomery App. No. 14042, unreported, 1993 WL 420127, the plaintiff brought a medical malpractice suit against a hospital. The hospital moved to disqualify plaintiff's counsel on grounds that plaintiff's counsel formerly represented the hospital, having served as trial counsel for the hospital for approximately twenty years. The attorney's job was to review, defend, and litigate medical negligence claims. The attorney-client relationship was terminated in June 1992. Plaintiff's cause of action arose out of medical treatment received on August 14, 1991. Over the twenty-year period that the attorney served as hospital counsel, he received knowledge of hospital policies and procedures, and procedures of staff physician rules and regulations. The trial court granted the motion to disqualify. On appeal, the appellate court sustained the trial court's ruling by finding that the subject matter of the representations was substantially related.

From these cases, a few guidelines for defining substantial relation can be found. First, a commonality of issues must exist for there to be a substantial relation. The moving party has the duty of showing what the connection between the cases is. Second, the moving party must provide some evidence that a need for the disqualification exists. A mere allegation that allowing the representation presents the possibility of a breach of confidence or the appearance of impropriety is not enough. Finally, absent a showing of a substantial relation between the subject matter of the cases, an attorney should not be disqualified from representing a party in an action adverse to a former client.

Further guidance as to the meaning of "substantial relation" can be found by looking at the plain meaning of the words. "Substantial" is defined as "considerable in importance, value, degree, amount, or extent." American Heritage Dictionary (2 Ed. 1985) 1213. "Relation" is defined as "a logical or natural association between two or more things; connection." *Id.* at 1043. Taken together, the plain meaning of the phrase implies that the two cases must have a clear connection.

■ Here, the representation in the first case was based on Haidet's personal injury claim, settled almost seven years prior to the commencement of this case. The claim in this case is based on Haidet's alleged defamation of Phillips, invasion of her privacy, and his intentional infliction upon her of severe emotional distress. The trial court applied the three-prong test set out in *Dana* and found all three-prongs to be satisfied. However, the trial court does not identify what the substantial relation is between the past and present cases, and none is apparent from a review of the record. Instead, the trial court's judgment rests on either the possibility of impropriety or the possible appearance of impropriety[1] as the basis for the disqualification. Without a showing of such evidence, an unsupported claim of a possible ethics violation is insufficient to warrant disqualification of Cannizzaro as Phillips's counsel. See *Kitts*, 97 Ohio App.3d 271, 646 N.E.2d 555. Merely because an event is possible does not make it probable. The two causes of action implicated in this case are wholly discrete. In order for the trial court to find a substantial relation, Haidet would have to present some evidence from which the trial court could determine that a harmful breach of confidence, whether intentional or accidental, is probable.

Haidet attempted to show a relation between the two cases by claiming that Cannizzaro would have access to his medical records gathered during the prior case. While this is true, we do not find a connection between the two cases. The first case involved a personal injury case, where medical records would be necessary to prove Haidet's claim. This cause of action arises from Haidet's alleged defamation and invasion of privacy of another. No medical ability or disability of Haidet is implicated. The only way the medical records would be useful to Phillips is if Haidet were to claim some medical or psychological problem that prevented him from doing the alleged acts. In that case, though, Haidet would be putting the information at issue and Phillips would be entitled to learn it through discovery. Additionally, the medical records in CFB's files, if any, are several years old and thus inconsequential to the claim at bar.

Haidet's second claim is that CFB had access to confidential information as to his financial situation by knowing of the settlement. Haidet claims that this is why CFB filed a motion to freeze his assets. This argument is not persuasive because it does not take into account either the passage of time or the rules of discovery in civil actions. While CFB may have had knowledge as to the amount of money Haidet received in 1990, we may not infer from that fact alone that CFB knew of Haidet's subsequent expenditures and investments. After six

---

1. "It is clear to the Court that if Mr. Cannizzaro continues to act as Plaintiff's counsel, he *may* either use the confidences gained during the prior representation or may give an appearance of impropriety in that he *may* appear to use said confidences." (Emphasis added.)

years, it was quite possible that Haidet had disposed of the money. In any event, Haidet's current financial status is discoverable in the present action.

Finally, Haidet claims that Cannizzaro should not represent Phillips because CFB gathered personal information about him to determine his credibility as a witness. The trial court concurred with this argument as this is a central function of every attorney who litigates. However, this argument is too broad. If we accept the argument that any attorney who ever determines the credibility of a client as a witness cannot represent another party in a different adverse action, there would be no need for a substantial relation test. All attorneys would be barred from representing any party in any action adverse to a former client. Unless Haidet can show some connection between the two cases, a mere evaluation for credibility will not be a sufficient reason for disqualification of an attorney.

We also must note that a determination of credibility is not a confidence. The credibility of a witness is a question of fact and is determined by the trier of fact in a case. Credibility is not a specific statement that can be kept secret, but rather another's opinion whether one is trustworthy. It is a value judgment made on an individual basis. Therefore, an attorney cannot keep a client's credibility secret; only the statements made to the attorney upon which the attorney's opinion may be based. Thus, a motion to disqualify cannot be based upon a desire to keep the attorney's judgment of one's credibility a secret.

After reviewing the case law on this question, it is clear that disqualifications have been reversed in cases in which the connection between the cases and the parties was much more severe than that presented here. The exception found in *Stevens* is easily distinguished. In *Stevens*, the attorney had worked for the defendant for over twenty years. Additionally, the plaintiff's claim was almost exactly the same as that the attorney had defended while employed by the defendant and arose during the attorney's representation of the party seeking his disqualification.

Here, the only connection between the two cases is that CFB was once co-counsel on a personal injury case in which Haidet was the plaintiff. Neither the parties nor the cause of action otherwise are the same or even similar. There was no contact between CFB and Haidet since his case was settled in 1990. Given the lack of evidence showing a substantial relation between the prior cause of action and this one, the trial court's decision to disqualify Cannizzaro was unreasonable as a matter of law. Therefore, Phillips's assignment of error is sustained.

The judgment of the Court of Common Pleas of Logan County is reversed, and the cause is remanded to that court for proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

HADLEY, J., concurs.

SHAW, J., dissents.

SHAW, Judge, dissenting.

The majority presents a thorough argument in defense of a litigant's right to counsel of choice. However, I remain troubled that despite our affirmation of the need to preserve attorney-client confidentiality, several of the intermediate state appellate decisions cited by the majority, ostensibly upon the issue of a substantial relation of subject matter, in actuality appear to require proof of a conflict in confidentiality interests between the former representation and the current litigation. This would seem to significantly defeat the confidentiality protection if the former client is only required to disclose it anyway, in an effort to prove a substantial relation in subject matter.

In short, it seems to me that the protection of attorney-client confidentiality and the need to promote the complete confidence of the public in our adversarial legal system are interests that should supersede a litigant's right to counsel of choice in civil litigation. As a result, I am persuaded that the "appearance of impropriety" standard utilized by the trial court is the better approach for the balancing of these important interests. In any event, I am not convinced that the trial court's decision constitutes an abuse of discretion in this case.

For the foregoing reasons, I respectfully dissent. I would affirm the judgment of the trial court.