**REYWAL CO. LIMITED PARTNERSHIP et al., Appellants,**

v.

**CITY Of DUBLIN, Appellee.**

[Cite as *Reywal Co. Ltd. Partnership v. Dublin*, 188 Ohio App.3d 1, 2010-Ohio-3013.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–522

Decided June 30, 2010.

Vorys, Sater, Seymour & Pease L.L.P., Bruce L. Ingram, Joseph R. Miller, and John M. Kuhl, for appellants.

Schottenstein, Zox & Dunn Co., L.P.A., Alan G. Starkoff, and Jeremy M. Grayem, for appellee.

CONNOR, Judge.

{¶ 1} Appellants, Reywal Co. Limited Partnership ("Reywal"), Joseph H. and Diane Banks, and Mark J. and Sonja Sheriff, appeal from a judgment of the Franklin County Court of Common Pleas denying their petition to detach approximately 43 acres of farmland from appellee, the city of Dublin. For the following reasons, we reverse the trial court's judgment.

{¶ 2} Appellants own three parcels of real estate totaling approximately 43 acres located on Sawmill Road in Franklin County.[1] All three parcels were annexed to appellee in 1974. Appellants purchased the properties subsequent to the annexation.[2] The properties consist of undeveloped farmland surrounded by commercial, retail, and residential development. There are no buildings or structures on the properties. For the past decade, the Reywal property has been used exclusively by the owner of a neighboring horse stable to grow hay and graze horses.

{¶ 3} On April 18, 2007, appellants filed a petition pursuant to R.C. 709.41 in the trial court, seeking detachment of the properties from appellee into Washington Township. In their petition, appellants asserted that appellee had failed to provide sewer services to the properties despite its pledge to do so at the time of annexation. Appellants further asserted that as a result of the annexation of the subject properties without providing sewer services, the properties are being taxed in substantial excess of the benefits conferred by reason of the annexation. Appellee opposed the petition.

{¶ 4} Over the next two years, the litigation generated a myriad of motions, conferences, and court orders pertaining to discovery issues. On November 19, 2008, appellee filed a motion to stay general discovery pending the court's ruling on its simultaneously filed motion for summary judgment. On December 8, 2008, appellants filed a combined motion for additional time to respond to appellee's motion for summary judgment and to conduct additional discovery pursuant to Civ.R. 56(F) and a response in opposition to appellee's motion to stay discovery.

{¶ 5} On January 9, 2009, the trial court filed a decision and entry granting appellee's motion to stay general discovery. In the same decision and entry, the trial court determined that appellants were entitled to limited additional discovery on the single issue raised in appellee's motion for summary judgment.

---

1. Reywal owns 27.513 acres; Diane Banks and Mark Sheriff together own 7.213 acres; and Diane Banks individually owns 7.964 acres.

2. Reywal purchased its property in 2000. The other two properties were purchased in 1987.

{¶ 6} Following submission of appellants' memorandum arguing against appellee's motion for summary judgment, the trial court granted summary judgment in favor of appellee, finding that appellants could not establish one of the elements of the detachment statute, that is, that the properties at issue are and will continue to be taxed in substantial excess of the benefits conferred by appellee.

{¶ 7} Appellants timely appeal, raising two assignments of error:

Assignment of Error No. 1:

The court of common pleas erred in granting summary judgment to Appellee because Appellants are entitled to detachment as their farmland is and will continue to be "taxed in substantial excess of the benefits conferred" by Appellee pursuant to R.C. 709.42, or, at the very least, genuine issues of material fact exist.

Assignment of Error No. 2:

The court of common pleas abused its discretion by denying Appellants' Civ.R. 56(F) Motion and by limiting Appellants to a single deposition of a witness solely of Appellee's choosing.

{¶ 8} In their first assignment of error, appellants contend that the trial court erred in granting summary judgment to appellee. Pursuant to Civ.R. 56(C), summary judgment is appropriate only when the evidence demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. Any doubts must be resolved in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 9} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Id. However, once the moving party satisfies its initial burden, the nonmoving party bears the burden of offering specific facts showing that there is a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in

4

the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ.R. 56(E); *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 10} Appellate review of summary judgment is de novo, and we apply the same standard as that used by the trial court. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383.

{¶ 11} R.C. 709.41 and 709.42 govern petitions for detachment of farmland. In order to detach farmland from a municipality, the petitioner must show four elements: (1) the farmland is not within the original limits of the municipal corporation, (2) by reason of the land being in the municipal corporation, the owner of the land is taxed and will continue to be taxed in substantial excess of the benefits conferred on the landowner, (3) detaching the land will not materially adversely affect the best interests or good government of the municipality, and (4) the detachment action is brought more than five years after the land was annexed to the municipal corporation. R.C. 709.41 and 709.42; *Griffith v. Huron* (Apr. 29, 1988), 6th Dist. No. E–87–46, 1988 WL 39714.

{¶ 12} In its motion for summary judgment, appellee first argued that appellants filed the detachment petition for an improper purpose, i.e., as a means to achieve their true objective—to pressure appellee into providing sewer services to the properties at appellee's expense. Appellee maintained that its failure to extend sewer services to appellants' properties has no bearing on appellants' detachment petition. Appellee submitted the deposition testimony of Robert Albright, a founding partner of Reywal.

{¶ 13} In his deposition, Albright testified that Reywal purchased its parcel in reliance on an October 1, 1973 letter from the then village of Dublin to the Franklin County commissioners regarding the availability of certain municipal services to 1,679 acres of land proposed for annexation to the village. Albright particularly referenced a paragraph in the letter pertaining to sanitary sewer services, which provides:

> On August 6, 1973 the Dublin Village Council authorized the Village Engineer to proceed with detailed plans for Sewer Services in certain areas of the village. On August 10, 1973 an application for a grant for sewer construction was filed with the O.W.D.A. (Ohio Water Development Authority) and included in this application was the Scioto East Trunk from Martin Road to the now existing north corporation line, which is just north of the I–270 overpass on Route 257, which is one of the contiguous points for this proposed annexation. This Trunk

is designed of sufficient capacity to eventually extend to this area now proposed for annexation.

Albright testified that the Reywal parcel is included in the acreage proposed for annexation as discussed in the foregoing paragraph and, accordingly, appellee is obligated to extend sewer services to it.

{¶ 14} Albright further testified that Reywal seeks to detach from appellee because appellee refuses to provide sewer services to the property, without which the property receives no benefit from appellee. Albright admitted that Reywal purchased the property for resale to commercial-development interests. Albright further stated that Reywal had previously entered into land sale contracts for its parcel with two separate entities, but that neither sale was consummated because appellee would not provide sewer services. Thus, according to Albright, absent sewer services, the property is virtually worthless.

{¶ 15} Albright admitted that he had not consulted appellee, either before or after purchasing the property, about providing sewer services to it, and had not consulted any municipality or township regarding potential attachment, the provision of sewer or water services, or property-tax issues. Albright stated that Reywal is willing to pay the assessment associated with the cost of extending sewer services to its property.

{¶ 16} Appellee further argued that appellants' improper use of the detachment statute notwithstanding, appellants could not establish the second required element, i.e., that they are and will continue to be taxed by appellee in substantial excess of the benefits conferred upon them by appellee. Specifically, appellee argued that the undisputed facts, derived from the Franklin County auditor's tax records, demonstrate that appellants, collectively, were being taxed less than $400 annually for the properties. Appellee contended that appellants' municipal property taxes were used to fund benefits that all appellee's landowners enjoy, and for which they should share the cost, such as parkland acquisition, capital improvements, and police services.

{¶ 17} In support of its argument, appellee submitted the affidavit of Marsha Grigsby, appellee's interim city manager and finance director, in which she referred to the Franklin County auditor's website, which contains a property summary and tax-distribution breakdown for each of the three parcels at issue. According to the website, for tax year 2007, Reywal, Banks and Sheriff, and Banks individually, paid $129.65, $135.05, and $123.61 respectively, in municipal property taxes to appellee. Appellants thus collectively paid less than $400 ($388.31) to appellee. Grigsby testified that the only tax set forth in the tax-distribution breakdown that is set or controlled by appellee is the municipal property tax.

{¶ 18} Grigsby testified that sewer service is not part of the property tax and has no impact on that tax rate. She further testified that the property tax collected by appellee is used primarily to fund land acquisition, such as parkland, and various capital-improvement projects, such as roadways; in addition, a portion of the tax is used for appellee's police department. Grigsby further asserted that because appellants' properties are located within appellee's municipal boundaries, the properties enjoy service from appellee's police department, as well as refuse and leaf pick-up service; however, were appellants to detach from appellee, the properties would no longer enjoy these services. Grigsby averred that detachment would not impact other taxes paid by appellants on the properties, such as county and school district taxes.

{¶ 19} Appellants' memorandum arguing against appellee's motion for summary judgment was supported by (1) the affidavit of Richard M. Vannata, (2) the deposition testimony of Marsha Grigsby, (3) the affidavit testimony of Albright, (4) the affidavit testimony of Diane Banks, and (5) the affidavit testimony of Lawrence A. Tornes

{¶ 20} Vannata, a certified real-estate appraiser, testified that he analyzed the subject properties for potential residential or commercial development, researched the municipal services currently available to the parcels, and met with Tornes to discuss the possibility of developing the properties using on-site-septic disposal systems. He opined, based upon his knowledge, experience, and expertise, that the only viable use for the properties is commercial, retail, or high-density residential development and, since the properties do not have access to sanitary-sewer lines, the properties cannot be developed for any of these viable uses and are virtually worthless for any use other than general agricultural purposes. He further opined that community improvements, such as roadways and parklands, do not benefit properties devoted exclusively to agricultural purposes.

{¶ 21} In her deposition testimony, Grigsby stated that Washington Township, not appellee, provides fire services to the properties. She further stated that the properties enjoy police protection by appellee even though there are no structures on the properties. She also averred that appellee's general provision of refuse, leaf, recycling, and snow-removal services benefit the properties; however, she admitted that she did not know whether appellants actually receive these services, as no one resides on the properties and there are no structures or roadways on the properties. She further stated that those services would be provided if requested by the property owners. Grigsby further averred that capital improvements, such as parkland acquisition, roadway improvements, and maintenance, benefit all landowners.

{¶ 22} Regarding sewer services, Grigsby admitted that approximately 90 percent of appellee's landowners receive the benefit of sewer service. She further testified that property taxes, including those paid by appellants, have been used to fund sewer improvements. In addition, she averred that a substantial portion of the property taxes collected are deposited in appellee's capital-improvements fund, which appellee may use for capital-improvement projects such as sewer services. She further testified that the Franklin County Board of Health has determined that without access to sewer services, the properties at issue are considered to be a known human health risk.

{¶ 23} Banks and Albright testified that their properties receive no benefits from appellee and, as a result, they have been taxed in substantial excess of the benefits conferred by appellee. They further averred that as a result of appellee's failure to provide sewer services, they are unable to develop their properties in any manner rendering them virtually worthless. Banks also testified that on multiple occasions she requested appellee's city council to extend sewer lines to the subject properties. Both Banks and Albright averred that they had worked with appellee's engineers on planning and capacity issues related to possible sewer extension and agreed to be part of a special assessment district in order to pay their proportionate share of the extension of sewer lines.

{¶ 24} Tornes, a certified professional soil specialist, testified that surface and subsurface soil testing that he conducted on the properties in March 2008 indicates that the soil is not suitable for on-site septic systems. Tornes opined, based upon his knowledge and expertise, that it would be extremely difficult and likely impossible to reasonably develop the properties for residential or commercial uses using on-site septic-disposal systems because those systems would create a health hazard due to untreated sewage running across the surface of the parcels and into the water system.

{¶ 25} Appellants argued that what benefits have been conferred by appellee and what constitutes being taxed in "substantial excess" of such benefits are disputed questions of fact to be resolved at trial. In particular, appellants argued that appellee had failed to identify any specific benefits provided to appellants' properties; rather, appellee had identified only general benefits (parkland acquisition, roadway construction and maintenance, and refuse, snow-removal, and police services) that are enjoyed by all municipal property owners. Appellants further argued that appellee failed to offer any evidence regarding the value of these alleged benefits. Appellants asserted that the question before the court is not what communal benefits are available; rather, the question is what benefits are provided to appellants' properties by reason of such properties being located within appellee's municipal boundaries. Appellants further asserted that R.C. 709.42 does not place a minimum threshold on the amount of taxation that

qualifies as excessive. Appellants maintained that unless and until they are able to develop their properties, they cannot receive any of the benefits identified by appellee; accordingly, the benefits are worthless and any taxation for such benefits is excessive. Appellants further argued that appellee's taxes are excessive because appellee has prevented appellants from receiving access to sewer service—a substantial benefit that appellee provides to the vast majority of its property owners.

{¶ 26} Appellants also argued that representations made by appellee in the October 1, 1973 letter concerning the services that it would provide to appellants' properties are relevant to this litigation. Appellants posited that detachment is a remedy for, and a safeguard against, an annexing authority's failure to abide by preannexation commitments. In support of this assertion, appellants noted that R.C. 709.03(D) requires municipalities to adopt "by ordinance or resolution, a statement indicating what services the municipal corporation will provide, and an approximate date by which it will provide them, to the territory proposed for annexation, upon annexation." Appellants further noted that pursuant to case law interpreting R.C. 709.033, a board of county commissioners is required to consider the ability of the annexing city to provide the necessary municipal services to the annexed territory before approving the proposed annexation. Appellants argued that these statutory safeguards are meant to ensure that the area proposed for annexation will be properly served by the annexing municipality. Appellant maintained that since R.C. 709.41 and 709.42 apply solely to farmland that has been annexed, the legislature must have intended detachment as the remedy for the failure of the annexing municipality to provide the benefits promised at the time of annexation. Appellants particularly noted R.C. 709.41, which prohibits the owner of farmland from initiating a detachment action within five years of annexation, as implying that an annexing authority must be given at least five years to make good on preannexation promises. Thus, argued appellants, representations made by appellee concerning the services that it would provide to appellants' properties must be considered in making a determination under R.C. 709.42.

{¶ 27} In addition, appellants challenged appellee's assertion that only property taxes controlled or assessed by it may be considered under R.C. 709.42. Appellants maintained that R.C. 709.42 does not contain such a restriction, because the statute provides that all taxes "for municipal purposes" should be considered in the court's analysis. Appellants posited that appellee's school-district tax could fall within the broad category of taxes used for "municipal purposes." Appellants argued that had the legislature intended to include only those taxes controlled or assessed by the municipality itself, it could easily have done so by using the phrase "taxed by the municipality" rather than the term taxed "for municipal

purposes." Thus, argued appellants, property taxes collected by the school district should be factored into the court's analysis under R.C. 709.42.

{¶ 28} In their reply to appellants' memorandum, appellee challenged appellants' reliance on the October 1, 1973 letter, arguing that the language in it did not amount to a promise that appellee would provide sewer service to the properties proposed for annexation. Appellee further argued that even if the language could be so construed, the appellants were not parties to or beneficiaries of such a promise, because appellants did not own the properties in 1973.

{¶ 29} Appellee also took issue with the argument that it had failed to quantify or specify the value of the benefits that appellants received for their properties, and that appellee's reliance on communal benefits was insufficient for purposes of R.C. 709.41 and 709.42. Appellee noted that the statutes at issue do not distinguish between communal benefits and any other types of benefits appellants receive as landowners. Appellee further argued that appellants did not need to actually utilize the benefits provided by appellee in order for them to have been conferred upon them.

{¶ 30} In addition, appellee maintained that appellants had failed to satisfy its statutory burden of demonstrating that the $400 they paid in taxes was in "substantial excess" of the benefits conferred. Appellee argued that even if a $400 annual tax burden could be considered "in excess" of the benefits conferred by appellee, appellants' burden of proving that they are being taxed in substantial excess of the benefits conferred by appellee still would not have been satisfied.

{¶ 31} Upon the parties' evidence and arguments, the trial court granted summary judgment in favor of appellee. As an initial matter, the trial court concluded that appellants' arguments regarding the alleged promises made by appellee prior to annexation, and prior to appellants' ownership interest in the properties, were not relevant to the ultimate issue before the court.

{¶ 32} In analyzing whether appellants are or will continue to be taxed in substantial excess of the benefits conferred upon them by appellee, the court referred to the tax-distribution breakdowns submitted by appellee. The court noted that municipal property taxes accounted for only two to three percent of the total taxes paid on each of the parcels and that appellants would be required to pay county and school-district taxes regardless of their success or failure on their detachment petition. The court rejected appellants' contention that school-district taxes should be included in the analysis under R.C. 709.42, reasoning that to review all taxes remotely associated with the municipality, without regard to whether the landowner would continue to pay those taxes if detachment is permitted, would be unduly prejudicial to municipalities, in that it would require the municipalities to defend taxes and benefits not under their control. The court noted that if a landowner seeks detachment because the taxes are in substantial

excess of the benefits received, logic dictates that the taxes to be reviewed are only those taxes that the landowner would not have to pay if the detachment petition is granted.

{¶ 33} The court also rejected appellants' argument pertaining to appellee's alleged failure to confer specific, rather than generic, benefits upon appellants' properties. The court reasoned that by virtue of being in the municipality and paying municipal taxes, appellants' properties receive the benefit of police and refuse services, as well as other general benefits enjoyed by all landowners. The court determined that the fact that appellants may have chosen not to avail themselves of the services available to them as property owners is not evidence that they are taxed in substantial excess of the benefits they receive. The court further concluded that appellants' dissatisfaction with their lack of sewer services is insufficient to demonstrate that appellants are taxed in substantial excess of the benefits conferred by appellee.

{¶ 34} In addition, the court acknowledged that no rule had been established to determine the minimum threshold for being taxed in substantial excess of the benefits conferred by a municipality; however, the court averred that it was unwilling to find that taxes totaling less than $400 on 40–plus acres could meet the definition of "substantial excess." Accordingly, the court found that appellants failed to demonstrate that they are and will continue to be taxed in substantial excess of the benefits conferred by appellee. Having found that appellants failed to satisfy one of the requirements set forth in R.C. 709.42, the court concluded that appellants' petition for detachment must fail. Thus, the trial court granted summary judgment in favor of appellee.

{¶ 35} On appeal, appellants contend that the trial court's analysis is erroneous for the following three reasons. First, the analysis assumes that a municipality is permitted to consider general public expenditures as a benefit to any taxpayer seeking to detach from the municipality and does not take into account the detriment to the taxpayer of the property remaining in the municipality. Second, the analysis assumes that R.C. 709.42 contemplates that a dollar amount attributable to a general public expenditure may simply be assigned to a taxpayer seeking to detach, without any regard to whether the expenditure actually provided a tangible benefit to that taxpayer. Finally, the analysis assumes that even in the absence of evidence that the general public expenditure conferred a tangible benefit on the taxpayer, the court may simply presume that this alleged benefit exceeds $400 per year.

{¶ 36} Appellants argue that R.C. 709.42 requires the court to conduct a comparative cost-benefit analysis specifically tailored to the individual taxpayer seeking to detach. Appellants submit that while certain direct benefits to a particular property owner should be considered, general public expenditures that

do not benefit a particular property owner should not be considered. Appellants contend that consideration of general public expenditures, regardless of actual circumstances, would for all practical purposes render R.C. 709.42 meaningless. Appellants maintain that the intent of the statute is to measure the benefits to the individual property owner, not the public at large.

{¶ 37} Appellants submit that appellee's general public expenditures for parkland acquisition, roadways, refuse, recycling, and snow-removal services do not actually benefit them as individual taxpayers, as appellee's refusal to extend sewer services to the properties has foreclosed development or habitation of the properties. Appellants argue that they cannot avail themselves of these communal benefits unless and until they are able to develop or inhabit the properties. In other words, appellants contend that the meaning of the term "benefits conferred" pursuant to R.C. 709.42 does not mean "benefits potentially available" to a property owner, but means "benefits actually received or utilized" by a particular property owner. Appellants contend that since they, as individual property owners, did not actually receive or utilize the alleged benefits, the benefits were never conferred by appellee.

{¶ 38} Appellants further contend that no evidence supports the trial court's finding that appellee's general public expenditures actually benefit appellants. To the contrary, appellants contend that the evidence they submitted in opposition to appellee's motion for summary judgment supports a finding that they did not actually benefit from appellee's general public expenditures. To that end, appellants cite the affidavit testimony of their real-estate expert, Vannata, and their soil expert, Tornes. As noted, Vannata testified that without access to sewer services, the properties cannot be developed for their only viable uses (commercial, retail, or residential development) and thus are virtually worthless. Vannata further opined that general public expenditures for community improvements do not benefit properties devoted exclusively to agricultural purposes. Tornes testified that the properties cannot be improved or inhabited because soil conditions preclude on-site septic systems.

{¶ 39} Appellants further contend that the trial court arbitrarily assigned a value to appellee's public expenditures and then simply presumed that these expenditures exceed the $400 annual property tax paid by appellants. Appellants argue that in so doing, the trial court violated Civ.R. 56 by construing the evidence in favor of appellee. Appellants maintain that in the absence of evidence regarding the value of the purported benefits, the trial court should have assumed that appellee provides no actual benefits to appellants, rather than assuming both that appellee provided actual benefits to appellants and that such benefits were greater than appellants' tax burden.

{¶ 40} In response, appellee argues that nothing in the language of R.C. 709.42 precludes consideration of general public expenditures. Appellee further contends that it is impossible to assign a specific value to each service provided to every landowner for the purpose of performing a comparative cost-benefit analysis. Appellee also maintains that appellants' decision not to develop or reside on their properties and take advantage of the proffered benefits does not mean that those benefits have no value.

{¶ 41} Appellee also points out that R.C. 709.42 utilizes the term "substantial excess," arguing that appellants have failed to demonstrate that an annual tax burden of $400 on 40–plus acres of property is in substantial excess of the benefits conferred by appellee. Appellee contends that the trial court properly determined that this tax rate, as a matter of law, could not be in substantial excess of the benefits conferred.

{¶ 42} Additionally, appellee argues that the trial court properly determined that appellants' complaints about the lack of sewer service, and the alleged promise to provide service, have nothing to do with the issue in this case. Appellee argues that the 1973 letter does not contain a promise to provide sewer service to the properties. Appellee also maintains that the record establishes that the taxes appellants pay to appellee do not go toward the provision of sewer services to appellee's property owners.

{¶ 43} Our research indicates that there is very little case law interpreting R.C. 709.41 and 709.42. Prior to oral argument in this case, only two Ohio cases mentioned R.C. 709.42; neither case is particularly helpful. However, since oral argument, two Ohio appellate courts have considered R.C. 709.42; both provide at least some guidance in resolving the issues presented in this appeal.

{¶ 44} In the first case, *Smith Evergreen Nursery, Inc. v. Magnolia*, 5th Dist. No. 2009 CA 00003, 2009-Ohio-6560, 2009 WL 4761440, appeal not accepted, 124 Ohio St.3d 1522, 2010-Ohio-1075, 923 N.E.2d 622, the property owner, Smith Evergreen, owned 103 acres that had been annexed to the village of Magnolia in 1958. The property was zoned for residential uses but could not be developed for that use because of unreclaimed mine spoils on the property and sewage-treatment-plant capacity limitations. The village rejected the property owner's application to rezone the property to allow for surface mining and a sand and gravel operation, after which the property owner sought to detach 62 of the 103 acres from the village into Sandy Township, which did not have zoning restrictions.

{¶ 45} At the hearing before a magistrate, Smith Evergreen argued that it was being taxed in substantial excess of the benefits conferred by the village. The evidence established that the village taxed Smith Evergreen $125 per year for the entire 62–acre parcel at issue. The village had a public water facility, but the

subject property was not connected to it. The village had a police department, which also served the township to which Smith Evergreen sought to attach. The village had a volunteer fire department; however, the village did not provide any evidence that the subject property utilized fire-protection services. The Sandy Township, to which Smith Evergreen sought to attach, had its own fire department.

{¶ 46} The magistrate found that Smith Evergreen should be allowed to detach because "the Smith property does not enjoy any municipal benefits as a result of being in Magnolia and suffers a detriment by virtue of restrictive zoning not compatible with the character of the Smith property. Police and fire protection is not a benefit conferred upon the Smith property by virtue of being located in Magnolia, as the same services are similarly provided in [the township]." *Smith Evergreen,* 2009-Ohio-6560, 2009 WL 4761440, at ¶ 7. The trial court issued a judgment entry effectively overruling the village's objections and adopting the magistrate's decision.

{¶ 47} On appeal, the court noted that the General Assembly has not set forth in R.C. 709.42 whether the substantial-excess question demands a comparative cost analysis of present municipal services provided to the property owner versus those provided by the township after detachment, as opposed to an evaluation whether the current tax burden on the property owner for his or her municipal services is substantially excessive per se. The court noted that the trial court applied a comparative approach, i.e., an assessment of current municipal services compared to township services after detachment. The court stated that a trial court could also properly address the issue by fundamentally considering whether or not the property owner, at the present time, is paying a substantially excessive amount for the services provided by the municipality. The court noted that the term "substantial" means " 'considerable in importance, value, degree, amount, or extent.' " Id. at ¶ 26, quoting *Phillips v. Haidet* (1997), 119 Ohio App.3d 322, 327, 695 N.E.2d 292, citing American Heritage Dictionary (2d Ed.1985) 1213. The court concluded that competent, credible evidence existed to support the trial court's conclusion that $125 in annual taxes for fire, police, and other municipal services equated to Smith Evergreen being taxed in substantial excess of the benefits conferred by the village.

{¶ 48} In the second case, *Campbell v. Carlisle,* 12th Dist. No. CA2009–05–053, 2009-Ohio-6751, 2009 WL 4895669, appeal accepted for review, 125 Ohio St.3d 1413, 2010-Ohio-1893, 925 N.E.2d 1001, Wallace and Helen Campbell owned 40 acres of farmland in the city of Carlisle. Each year, the Campbells filed an application to value the property for agricultural use (a "CAUV" application). As a result of the CAUV valuation, the Campbells pay approximately $172 in yearly

property taxes. Without the CAUV valuation, the Campbells property taxes would amount to $12,538.99.

{¶ 49} The Campbells filed a petition to detach their property from the city. The city opposed the petition and, following a trial, the court denied the petition. The trial court reasoned that the Campbells were not and would not continue to be taxed for municipal purposes in excess of the benefits they received because (1) they paid only $172 in annual taxes on the property, (2) approximately 80 percent of the taxes go to the local school district, and (3) detachment of the property would not alter its status as agricultural use.

{¶ 50} On appeal, the Campbells argued that the trial court considered the wrong tax valuation. The Campbells urged that the court should have considered the non-CAUV valuation—resulting in an annual tax of $12,538.99—rather than the yearly tax of $172 based on the CAUV. The court of appeals agreed, reasoning that the word "taxed" used in R.C. 709.42 must be construed to mean the property's "true value in money." Id. at ¶ 10. When the detachment provisions were enacted, CAUV tax valuations were not in existence; thus, a court was required to consider the property's true valuation. The court noted that when the CAUV provisions were enacted, which was well after the detachment provisions were enacted, the General Assembly neither incorporated nor referred to the detachment statute, nor did the General Assembly modify R.C. 709.42 to require the CAUV tax valuation to be the controlling tax amount in a detachment proceeding. Id. at ¶ 13. Thus, by implication, the legislature expressed an intent not to change the tax valuation that a court must consider in a detachment proceeding. As a result, the court held that the CAUV-reduced tax cannot be considered as the relevant "tax" in a detachment proceeding. Id. at ¶ 15.

{¶ 51} In the instant case, the trial court granted summary judgment on a single fact—the amount of the yearly, CAUV-reduced tax of $388.81 collectively paid by appellants to appellee. The court did not consider the full freight of taxes paid on this property. Even though only one of the parcels was subject to the CAUV-reduced tax, there is no evidence in the record regarding the current tax rate without the CAUV-reduced tax. In 2001, when the fair market value of the parcel was $332,220, the taxes were $20,897.92 per year. In 2008, the fair market value of the parcel was $1,086,800, and the CAUV-reduced tax was $4,426.78 (total taxes on the parcel, not just to appellee), but there is no evidence of the non-CAUV-reduced tax rate. There was quite a difference between the amounts CAUV-reduced tax rate and the non-CAUV-reduced tax rates in 2001.

{¶ 52} Moreover, even though the trial court did not examine any services provided to the properties, the court held that they had to be worth more than $388. The trial court here did no comparison of the current municipal services

compared to township services after detachment. Although appellee alleged that the city of Dublin provided parkland acquisition, roadways, refuse, recycling, snow-removal services, and police protection, the scant evidence did provide that there was no snow removal service provided to these parcels and fire services were provided by Washington Township. There was no other evidence of the township services and no evaluation of the cost of the services to determine whether the property owners, at the present time, are paying a substantially excessive amount for the services provided by the municipality. Neither analysis was completed by the trial court; the trial court just assumed that the services were valued at more than $388.

{¶ 53} Thus, we find that the trial court erred in granting appellee's motion for summary judgment because there is a genuine issue of material fact whether the farmland is and will continue to be taxed in substantial excess of the benefits conferred by appellee pursuant to R.C. 709.41 and 709.42. Appellants' first assignment of error is sustained.

{¶ 54} In their second assignment of error, appellants contend that the trial court abused its discretion in denying their Civ.R. 56(F) motion and in limiting them to a single witness deposition selected by appellee.

{¶ 55} At this juncture, an overview of the procedural history of this litigation pertaining to discovery is in order. In October 2007, appellants served appellee with requests for production of documents. In early March 2008, appellants served a Civ.R. 30(B)(5) notice of deposition on appellee, designating 18 areas of requested testimony. Depositions scheduled for early April 2008 were subsequently postponed by counsel for appellee due to a medical emergency.

{¶ 56} On April 8, 2008, appellants filed a motion to compel the production of e-mail correspondence relating to the subject properties and to compel the depositions of appellee's representatives. In May 2008, counsel for appellee provided appellants with the names of three individuals who would testify and the specific topics each would address. Thereafter, following numerous motions, conferences, and court orders pertaining to discovery, appellee, in late September 2008, made its final production of e-mail correspondence related to the subject properties. In mid-October 2008, appellants renewed their request for the Civ.R. 30(B)(5) depositions of the three individuals that appellee had already identified and requested depositions of three additional witnesses. In early November 2008, counsel for both parties agreed to conduct the depositions in early December 2008.

{¶ 57} Thereafter, on November 19, 2008, appellee filed a motion requesting an order staying general discovery pending the court's ruling on its contemporaneously filed motion for summary judgment. Appellee noted that its summary-judgment argument was narrowly focused on the substantial-excess prong of R.C.

709.42 and was supported by Grigsby's affidavit. Appellee argued that further discovery, other than deposing Grigsby, was unnecessary to resolve the single issue raised in its motion for summary judgment.

{¶ 58} Appellants filed a combined motion for additional time to respond to appellee's motion for summary judgment and to conduct additional discovery pursuant to Civ.R. 56(F) and a response in opposition to appellee's motion to stay discovery. Appellants argued that appellee's refusal to produce witnesses for deposition prevented appellants from discovering further facts necessary to rebut appellee's motion for summary judgment. In support of this argument, appellants submitted the affidavit of their counsel, Joseph R. Miller, who attested that facts necessary to rebut appellee's motion for summary judgment included what benefits appellee had conferred upon appellants, what portion of appellants' taxes contributed to those benefits, and whether appellants have been treated differently from similarly situated property owners. Miller further attested that appellee's proposal to offer a single witness, Grigsby, for deposition testimony was unacceptable.

{¶ 59} Appellee responded, arguing that appellants had failed to sufficiently explain the need for additional depositions. More particularly, appellee noted that the affidavit of appellants' counsel, purporting to demonstrate why appellants could not respond to appellee's motion for summary judgment and why additional facts needed to be discovered, was insufficient to satisfy Civ.R. 56(F), because that rule requires an affidavit from one of the parties, not their counsel. Appellee further argued that the affidavits provided by Albright and Banks did not address why additional discovery was needed.

{¶ 60} Appellants' reply argued that their Civ.R. 56(F) motion was properly supported by the affidavit of their counsel. Appellants maintained that further discovery would show that appellants do not enjoy the benefits enjoyed by other property owners.

{¶ 61} As noted earlier, the trial court filed a decision and entry on January 9, 2009, granting appellee's motion to stay general discovery pending resolution of appellee's motion for summary judgment. The court reasoned that if appellee were successful on the single argument raised in its motion for summary judgment, time and resources of the parties and the court would be saved by preventing additional costly discovery.

{¶ 62} In addition, the court granted in part and denied in part appellants' motion for additional time to respond to appellee's motion for summary judgment and to conduct additional discovery. More particularly, the court concluded that appellants were not entitled to depose all the individuals disclosed by appellee in response to appellants' Civ.R. 30(B)(5) notices, as disclosure of those individuals was made in response to a broader discovery request by appellants. The court

further concluded that the majority of information sought in the Civ.R. 30(B)(5) notices was not relevant to the issue whether appellants were being taxed in substantial excess of the benefits they received from appellee. The court specifically determined that the information pertaining to sewer services was not relevant because appellants had not been taxed for those services.

{¶ 63} The court determined, however, that appellants were entitled to depose Grigsby and could request additional limited discovery solely on the issue raised in appellee's motion for summary judgment by submitting such a request to appellee within ten days of the time-stamped date of the decision and entry. To allow for the additional limited discovery, the court granted appellants additional time to respond to appellee's motion for summary judgment.

{¶ 64} The initial 18 areas of requested testimony identified in the Civ.R. 30(B)(5) notice were the benefits appellee agreed to provide to property owners and benefits conferred on the Sawmill/Summitview area; health and safety issues related to the use of septic or other sewage-disposal systems; soil conditions; issues regarding Dublin's sewer system; plans, ideas, and concepts for the development of and preferred land use for the Sawmill/Summitview area and comprehensive plans or master plans; appellee's contention that Reywal is not taxed in substantial excess of the benefits conferred by appellee; and the contention that the detachment would affect the best interest and good government of Dublin and the method by which property taxes are calculated and assessed to property located in the city of Dublin.

{¶ 65} In response to the 18 areas of requested testimony identified in their Civ.R. 30(B)(5) notice, appellee initially identified three individuals whose testimony would be necessary regarding the designated areas. Dublin admitted that it intended to go forward with the depositions. After appellee produced the requested e-mails responsive to Reywal's requests, Reywal identified three more Dublin representatives that they wanted to depose, a Dublin councilperson for Reywal's ward and two engineers who had discussions with Reywal or its representatives about extending sewer service to the property.

{¶ 66} The trial court limited appellants' discovery to Grigsby and to the issue whether they were being taxed in substantial excess of the benefits they received from appellee. The court specifically determined that the information pertaining to sewer services was not relevant because appellants had not been taxed for those services. That statement arose from Grigsby's affidavit, which stated that the "sanitary sewer service is not part of the City/Village tax, and has no impact on that tax rate." However, during Grigsby's deposition, she discussed a property levy tax approved by the voters of Dublin that was used for sewer services. Thus, it seems as if the affidavit was slightly misleading because property taxes had been used at one time for sanitary-sewer services and

18

appellants had paid those taxes but were not provided with those benefits. An exploration of this topic might be more relevant on remand when the parties compare the benefits received from the city against the benefits received from the township.

{¶ 67} Under the facts of this case, the issue is rendered moot because we are remanding the case to the trial court since summary judgment was inappropriate. Thus, the parties have the opportunity to conduct more discovery. However, under these facts, the discovery seemed too limited. Appellee had originally identified three witnesses pursuant to the Civ.R. 30(B)(5) notice and then told the court that appellants needed to depose only one. After its long delay in providing discovery, appellee then attempted to unreasonably limit discovery. Upon remand, these issues are relevant to the benefits conferred and whether the properties at issue are and will continue to be taxed in substantial excess of the benefits conferred by appellee.

{¶ 68} Appellee filed a motion to strike and a response in opposition to appellants' second notice of supplemental authority. Appellee argues that appellants filed an argument along with its supplemental authority. The facts are unusual in this case since there was very little case law before the written briefs were due and then two appellate decisions were released after that time. Since appellee also filed a response, the argument is moot. We note that this court is capable of conducting its own research, whether appellants had filed the supplemental authority or not. Appellee's motion to strike is denied.

{¶ 69} For the foregoing reasons, appellants' first assignment of error is sustained, the second assignment of error is rendered moot, and appellee's motion to strike is denied. The judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded to that court for further proceedings in accordance with law and consistent with this decision.

Judgment reversed
and cause remanded;
motion to strike denied.

Tyack, P.J., concurs.

French, J., concurs separately.

French, Judge, concurring separately.

{¶ 70} I agree with the majority's opinion that appellants' first assignment of error should be sustained. I also agree that our resolution of that first assignment renders appellants' second assignment of error moot. Having

reached that conclusion, I would decline to opine on the validity of the trial court's prior rulings regarding discovery.