DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas. The following facts are pertinent to our disposition of the instant cause.
 {¶ 2} In 1999, Eric Phillips and other investors, including Louis R. Sachs, formed two limited liability corporations, Toledo Apartments, Ltd. and Village/University Apartments Ltd. (hereinafter collectively known as "LLCs"), for the purpose of purchasing residential apartment complexes in Toledo, Lucas County, Ohio. Phillips, through an apartment managing corporation, First Phillips, Inc. ("FPI"), in which he was the principal shareholder, was initially the manager of the LLCs. It is undisputed that after the formation of the LLCs, FPI retained Fuller Henry, Inc. ("Fuller Henry") to handle legal matters, such as evictions, related to the operation of the rental properties held by the LLCs.
 {¶ 3} In January 2003, certain investors, including Sachs, instituted legal proceedings, pursuant to the LLCs' operating agreement, to modify the operating agreement so that they could remove Phillips/FPI as manager of the LLCs' residential rental properties. In turn, Phillips and FPI filed suits seeking injunctive relief against Sachs, other members of the LLCs, and the LLCs. Appellees and the other defendants in those cases filed counterclaims. Sachs was represented by his daughter, Maria Sachs, and George Conklin. Phillips and FPI were represented by Fuller Henry.
 {¶ 4} On February 28, 2003, the parties settled all of their claims by entering into a "General Release Agreement." Pursuant to the agreement, each of the parties released, among others, their "past, present [sic] and future" attorneys "of any matter, cause [sic] or thing whatsoever incurred, done, omitted [sic] or suffered to be done arising out of, related to [sic] or in any way directly or indirectly connected with [the instant] Lawsuits * * *." Sachs purchased Phillips' investment interest in the LLCs, paying Phillips $600,000 in cash and securing the remainder owed with a $1,000,000 cognovit note.
 {¶ 5} Through a separate agreement, FPI withdrew as the operating manager of the investment properties. For approximately one year after the settlement, ANYI Management Company ("ANYI") managed the rental properties, and was represented by Fuller 
Henry in legal matters such as "evictions, minor labor issues, and non-litigation warranty/contract issues for the Properties." After that point, Sachs and MLM Management Corporation ("MLM") assumed control over the operation of the LLCs.
 {¶ 6} On January 31, 2005, appellees, Sachs and MLM, filed a lawsuit against appellants, Phillips and FPI. In their complaint, appellees asked the court to: (1) rescind the February 28, 2003 settlement agreement and all related agreements; (2) excuse appellees from any further obligations arising from those agreements; (3) find that appellants fraudulently induced appellees to invest in the LLCs' properties and to award appellees damages for the same; (4) find that appellants breached their fiduciary duty in the management of the LLCs and award appellees damages for the same; (5) award appellees damages for the breach of the February 28, 2003 letter agreement and all related agreements; (6) award appellees punitive damages; and (7) order Phillips to pay appellees' attorney fees.
 {¶ 7} Appellants answered and filed counterclaims based upon breach of contract, fraud, and indemnification. In the case sub judice, appellants are represented by attorneys who are members of the law firm of Fuller Henry. Appellees therefore filed a motion to disqualify defense counsel, asserting that the firm and its members have "multiple conflicts of interest mandating immediate disqualification." These include: (1) Fuller Henry was appearing adverse to a former client, specifically, Sachs in his capacity as an investor in the LLCs; (2) the firm "ought to be a witness" under DR 5-101 and 5-102; and (3) Fuller Henry's representation in the present cause constituted an appearance of impropriety within the meaning of Canon 9 of the Code of Professional Responsibility.
 {¶ 8} On September 8, 2005, the trial judge granted appellees' motion to disqualify appellants' counsel. While the court did not find any conflict of interest or address the issue of whether counsel from Fuller Henry would be called as witnesses, it did conclude:
 {¶ 9} "There is no question that Fuller Henry did represent certain parties on matters relating to the management of the properties during the period from 1999 through 2004. Further, even if no attorneys from Fuller Henry actively participated in the settlement of the 2003 case, they were counsel of record. Thus, regardless of whether a conflict actually exists or not, and regardless of whether attorneys from Fuller Henry ought to be witnesses, this representation at a minimum gives the appearance of impropriety [sic] and this court therefore finds that the law firm of Fuller Henry should be disqualified from any further representation of defendants in this matter."
 {¶ 10} Appellants timely appeal the trial court's decision and assert the following assignment of error:
 {¶ 11} "I. The trial court erred to the prejudice of both Eric Phillips and First Phillips, Inc. (herein "Phillips") when it disqualified Phillips' counsel of choice-Fuller Henry Ltd. [and in particular attorneys Dennis Lyle and Daniel Ellis] — in the case captioned Louis Sachs, et al. v. Eric Phillips, etal., Lucas County Common Pleas Case Number CI-05-1459."
 {¶ 12} In reviewing a trial court's decision to disqualify a party's counsel, we apply an abuse of discretion standard. 155N. High Ltd. V. Cincinnati Ins. Co. (1995), 72 Ohio St.3d 423,426. An abuse of discretion implies that the trial court's attitude in reaching its decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. However, disqualification of an attorney is a drastic measure which should not be imposed unless absolutely necessary.Kala v. Aluminum Smelting Refining Co., Inc. (1998),81 Ohio St.3d 1, 6, citing Freeman v. Chicago Musical Instrument Co.
(C.A.7, 1982), 689 F.2d 715, 721. "Disqualification, therefore, `should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint.'" Spivey v. Bender (1991),77 Ohio App.3d 17, 22, quoting Glueck v. Jonathan Logan, Inc. (C.A.2, 1981),653 F.2d 746, 748.
 {¶ 13} Appellants initially contend that the trial court erred by failing to properly apply a mandatory tripartite test used by a number of Ohio appellate courts in determining whether disqualification of a party's counsel is warranted in any cause of action. See, e.g., Luce v. Alcox,165 Ohio App.3d 742, 10th Dist. No. 05AP-877, 2006-Ohio-1209; Mansfield Plumbing Products,LLC v. Franz, 5th Dist. No. 04COA012, 2004-Ohio-4765; Hollis v.Hollis (1997), 124 Ohio App.3d 481 (Eighth Appellate District);Phillips v. Haidet (1997), 119 Ohio App.3d 322 (Third Appellate District); Kitts v. U.S. Health Corp. of S. Ohio (1994),97 Ohio App.3d 271 (Fourth Appellate District); Centimark Corp. v.Brown Sprinkler Serv., Inc. (1993), 85 Ohio App.3d 485 (Eleventh Appellate District). See, also, Morgan v. North Coast Cable Co.
(1992), 63 Ohio St.3d 156, 161(discussing, but not expressly adopting, the three part test set forth in Dana Corp. v. BlueCross Blue Shield Mut. of Northern Ohio [C.A.6, 1990],900 F.2d 882.)
 {¶ 14} Because the Dana Corp. test was also embraced by this court in Bunkers v. Bunkers, 6th Dist. No. WD-04-058,2005-Ohio-1215, we conclude that the trial court in the case sub judice should have applied it in order to determine whether appellants' trial counsel should be disqualified.[1]
Accordingly, the common pleas court was required to determine whether all of the following applied: "(1) [a] past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." Bunkers v. Bunkers,2005-Ohio-1215, at ¶ 4.
 {¶ 15} However, in this cause, the trial court simply noted: (1) Fuller Henry represented "certain parties" on "management matters;" and (2) despite the fact that the firm "did not actively participate in the settlement agreement, Fuller Henry was counsel of record [for Phillips and FPI] in the 2003 judicial dispute." Based upon this alleged "representation," the court then determined that an appearance of impropriety existed. This analysis does not satisfy the standard set forth above.
 {¶ 16} The moving party bears the burden of demonstrating the need to disqualify counsel. Centimark, 85 Ohio App.3d at 489. "[T]he moving party must provide some evidence that a need for the disqualification exists. A mere allegation that allowing the representation presents the possibility of a breach of confidence or the appearance of impropriety is not enough." Phillips v.Haidet, 119 Ohio App.3d at 327. Appellees offered no evidence to establish that any attorneys from Fuller Henry ever represented Sachs and/or MLM on any legal matter.
 {¶ 17} To the contrary, Fuller Henry offered the affidavits of the two attorneys involved in the representation of Phillips and FPI in the 2003 lawsuits against certain members, including Sachs, of the LLCs and against MLM. Each attorney avers that his participation in the 2003 suits was solely to preclude the modification of the operating agreements of the LLCs, that neither he nor any other attorney at Fuller Henry participated in the negotiations leading to the settlement agreement, that neither drafted the settlement agreement or buy-out documents referenced in the agreement, and that, at all times, each attorney acted "adverse to the interests and actions being taken by Sachs/MLM in the 2003 litigation." Each affiant also vows that at all times during the 2003 lawsuits, Sachs and MLM had attorneys of their own choosing, that neither attorney had any knowledge of the valuations of the rental properties, that neither prepared any nformation concerning those valuations, and that neither communicated with anyone who was connected with providing that information.
 {¶ 18} In his affidavit, Fuller Henry attorney, Daniel T. Ellis, avows that the only time he made an appearance on behalf of Sachs and MLM was pursuant to an explicit written waiver in the cognovit note that permitted him to represent Phillips and confess judgment against Sachs and MLM. Ellis' affidavit also states that, in recent months and upon the request of Sachs' counsel/representative, he assisted, as Phillips' attorney, in effectuating a deed in lieu transfer in which "the bank" released the mortgage for the return of the properties that were used as security as part of the 2003 settlement. The affidavit further states that Ellis never met Sachs and, to his knowledge, never met an officer of MLM.
 {¶ 19} Attorney Dennis A. Lyle's affidavit swears that Fuller Henry did not represent any of the rental properties that were later incorporated as the LLCs at the time of their purchase. Lyle also vows that Fuller Henry was local counsel for FPI on issues related only to the management of the rental properties from 1999 through 2003 and dealt with such matters as evictions, lease negotiations, minor labor disputes, and commercial contract warranty claims. Lyle's affidavit further avers that his firm represented FPI in the 2003 lawsuits as an adversary to Sachs and MLM. According to the affidavit, Fuller Henry continued to represent ANYI on matters related to the management of the rental properties until the summer of 2004. Lyle's affidavit, however, also swears that Fuller Henry was not the corporate counsel for either FPI or ANYI and did not, therefore, have any access "to the financial records of the businesses" or the LLCs.
 {¶ 20} Based upon the foregoing, it is clear that Fuller 
Henry and the attorneys of that firm never had an attorney-client relationship with either Sachs or MLM and, in fact, acted in a position adverse to appellees' interests. Nevertheless, appellees argue that Fuller Henry's representation of the "LLCs" is the equivalent of the representation of Sachs because Sachs owned the largest number of shares in those corporations, and, therefore, Fuller Henry did have an attorney-client relationship with Sachs. We disagree. The parties agree that Fuller Henry represented FPI in the 2003 lawsuits. FPI was the managing company of the LLCs, not the LLCs themselves. The record reveals FPI was and/or is a managing corporation formed by Phillips; there is absolutely no evidence in the record of this cause to establish that either Sachs or MLM had any ownership interest in FPI and were, therefore, not in an attorney-client relationship with Fuller Henry. Accordingly, the first prong of the test set forth in Bunkers is not satisfied, and the trial court's decision to disqualify the members of that law firm as appellants' attorneys is an abuse of discretion.[2] As a result, appellants' sole assignment of error is found well-taken.
 {¶ 21} On consideration whereof, this court finds that substantial justice was not done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Singer, P.J., concur.
[1] Appellees argue that the Dana Corp. test is not applicable to a case where an attorney is disqualified on the basis of a violation of Canon 9 of the Code of Professional Responsibility, which requires that an attorney avoid even the appearance of impropriety. We disagree. See, e.g., MansfieldPlumbing Products, LLC v. Franz, supra.
[2] Even if we do not apply the Bunkers test, the trial court had no basis for granting the motion to disqualify appellants' counsel. We must repeat that Fuller Henry was "counsel of record" in the 2003 case in an adversarial position only. Appellees failed to offer any evidence demonstrating that the firm's attorneys acted in any other capacity.