**[Cite as *Reid v. Reid*, 2023-Ohio-3140.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Jeffrey Reid                                    Court of Appeals No.  OT-22-037

       Appellant                              Trial Court No.  20DR084

v.

Christine Reid                                  **DECISION AND JUDGMENT**

       Appellee                                Decided:  September 1, 2023

* * * * *

Lorretta Riddle, for appellant.

Shelly Kennedy, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellant Jeffery Reid ("husband") and appellee Christine Reid ("wife") were granted a divorce by the Ottawa County Court of Common Pleas, Domestic Relations Division, on July 8, 2022.  On appeal, husband challenges the trial court's decision regarding various support orders and its decision not to disqualify wife's trial counsel.  We affirm.

## A. Facts and Procedural History

{¶ 2} The parties were married in 2010 and have three minor children together. In June of 2020, the parties decided to end their marriage, and wife "immediately" moved out of the family residence. On July 8, 2020, husband met with Attorney Shelly Kennedy for the purpose of "find[ing] an attorney who could start the divorce proceedings and represent [husband] in court." The meeting was "cordial," but husband left "dissatisfied," and decided "not [to] hire" Kennedy.

{¶ 3} Husband retained other counsel and filed a complaint for divorce on August 4, 2020. Wife retained Attorney Kennedy to represent her. On August 31, 2020, husband filed a motion to disqualify Kennedy, arguing that he had provided "confidential communications" to Kennedy during their meeting and that he would be "irreparably prejudiced" if she was allowed to represent wife. Following a hearing, husband's motion was denied.

{¶ 4} The final hearing in divorce was held before a magistrate on November 5, 2021. The magistrate issued a decision on a range of issues. Of significance to this case, the magistrate recommended that mother be named the custodial and residential parent and made particular findings with regard to support and the division of property. Husband objected. By Decision and Order dated July 8, 2022, the trial court overruled husband's objections and granted the parties a divorce. Husband appealed and raises five assignments of error for our review:

2.

ASSIGNMENT OF ERROR NO. I:  The trial court erred in using appellan'ts [sic] income on the date of the final hearing and not appellee's income at the date of the final hearing.

ASSIGNMENT OF ERROR NO. II:  The trial court erred in not finding appellee under employed.

ASSIGNMENT OF ERROR NO. III:  The trial court erred in not determining if appellant has 90 or more over nigths [sic] with the childrena [sic] and therefore entitled to a ten percent reduction in child support.

ASSIGNMENT OF ERROR NO. IV: The trial court erred in finding that appelle [sic] was not co-habiting with a paramore and thus not entitled to spousal support.

ASSIGNMENT OF ERROR NO. V:  The trial court erred in not disqualifying appellee's attorney Shelly Kennedy.

### B.  Standard of Review

{¶ 5} When a trial court reviews objections to a magistrate's decision, review is de novo. Not only is the court not bound by the magistrate's decision, the court has an obligation to conduct an independent review as to the objected matters to ascertain whether the magistrate has properly determined the facts and appropriately applied the law. *Boersma v. Brancatto*, 6th Dist. Lucas No. L-12-1271, 2013-Ohio-3052, ¶ 8 citing Civ.R. 53(D)(4)(d) and *Kovacs v. Kovacs,* 6th Dist. Erie No. E-03-051, 2004-Ohio-2777, ¶ 6.

3.

{¶ 6} When a court of appeals reviews the decision of a trial court overruling objections to a magistrate's decision, the standard of review is abuse of discretion. The trial court's ruling will not be disturbed absent an abuse of discretion. *Boersma* citing *Dulany v. Taylor,* 10th Dist. Franklin No. 12AP-365, 2013-Ohio-1147, ¶ 7. An abuse of discretion is more than an error of law or lapse of judgment, the term connotes that the court's attitude was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[T]hat the appellate court merely may have reached a different result is not enough." *In re S.S.L.S.,* 7th Dist. Columbiana No. 12 CO 8, 2013-Ohio-3026, ¶ 22.

### C. The trial court did not abuse its discretion in calculating the parties' gross income.

{¶ 7} In his first assignment of error, husband complains that the trial court erred by measuring his income "at the time of the final hearing" while measuring wife's income at the time of the filing of the complaint. The record does not support husband's claim.

{¶ 8} According to the magistrate's findings, husband's annual gross income, "at the time of the filing *of the complaint* in 2020 was about $78,657." As for wife, the magistrate found that "[a]t the time of the filing *of the complaint*, [wife's] annual gross income from her employment * * * was about $21,112." (Magistrate's November 22, 2021 Decision at 3). Following the trial court's "careful and independent examination and analysis of the Magistrate's Decision," the trial court agreed with the magistrate's calculations. The trial court specifically found that the "effective date of this child

4.

support order is: 8/4/2020, which is the filing date *of the complaint*." (Emphasis added; July 8, 2020 Decision and Order at 5). The court's worksheet, attached to the decision, lists those amounts under "annual gross income."

{¶ 9} Thus, the record establishes that the trial court calculated gross income, as to each party, as of the date the complaint was filed. Husband's claim—that the trial court used one date for husband and another for wife—is unsupported by the record. Therefore, we find husband's first assignment of error not well-taken.

**D. The trial court did not err in not imputing income to wife.**

{¶ 10} In his second assignment of error, husband argues that the trial court erred in not finding that wife is underemployed for purposes of calculating child support.

{¶ 11} "Income" for child support purposes includes "gross income" and "potential income" of a parent who is unemployed or underemployed. R.C. 3119.01(C)(5)(b). "Potential income" imputes income to a parent the trial court determines is voluntarily unemployed or voluntarily underemployed from 11 factors. *Basista v. Basista*, 6th Dist. Wood No. WD-14-076, 2016-Ohio-146, ¶ 19-20, citing R.C. 3119.01(C)(11). "[T]he question [of] whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." *Funkhouser v. Funkhouser,* 6th Dist. Erie No. E-18-039, 2019-Ohio-733, ¶ 33.

{¶ 12} At trial, wife testified that she was employed "full time" at a residential care facility. She added that she received two raises in "less than a year," as a result of

"working [her] butt off."  On appeal, husband speculates that wife "should be" working 40 hours per week, instead of "only" 35 hours, but he offers no evidence that additional hours were even available.

{¶ 13} In the absence of any evidence to support his claim, we cannot say that the trial court abused its discretion in not finding that wife was voluntarily underemployed. Therefore, husband's second assignment of error is found not well taken.

### E.  The trial court did not abuse its discretion in calculating child support.

{¶ 14} In his third assignment of error, husband claims that the trial court erred in failing to determine "if" he had 90 or more nights with his children, which would have entitled him to a ten percent reduction in child support, under R.C. 3119.051.  We review under an abuse-of-discretion standard.  *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 15} R.C. 3119.051(A) provides:

(A) Except as otherwise provided in this section, a court * * * calculating the amount to be paid under a child support order shall reduce by ten per cent the amount of the annual individual support obligation for the parent or parents when a court has issued or is issuing a court-ordered parenting time order that equals or exceeds ninety overnights per year.

{¶ 16} Thus, under R.C. 3119.051(A), a court "shall reduce a parent's child support order by 10 percent if the court has issued an order directing parenting time that equals or exceeds 90 overnights per year."  *Combs v. Ellington*, 12th Dist. Butler No.

6.

CA2022-01-001, 2022-Ohio-3514, ¶ 21. The downward deviation is provided for on Line 19(b) of the Ohio Child Support Worksheets. *Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316, C-210332, 2022-Ohio-2398, ¶ 44.

{¶ 17} Here, line 19(b) of the child-support worksheet was left blank, indicating that the automatic deviation did not apply, which is consistent with the evidence presented in this case. The temporary orders issued herein provided that husband would have "overnights on the days that he is not working." Likewise, the final order provided for husband to have "liberal parenting time * * * as the parties agree." But there is no evidence, and husband does *not* allege, that his overnight parenting time equaled or exceeded, or will equal or exceed, 90 nights per year. In the absence of any such argument, or evidence to substantiate such an argument, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in not ordering a deviation under R.C. 3119.051.

### F. The trial court did not abuse its discretion in awarding wife spousal support.

{¶ 18} In his fourth assignment of error, husband claims that the trial court erred in not finding that wife was "co-habiting with a paramour and thus not entitled to spousal support."

{¶ 19} The purpose of spousal support is to provide for the financial needs of the former spouse. *Moell v. Moell*, 98 Ohio App.3d 748, 751, 649 N.E.2d 880 (6th Dist.1994). Therefore, if the former spouse is "living with another person [who] provides support or is supported, then the underlying need for [spousal support] is reduced or does

7.

not exist." *Foster v. Foster*, 10th Dist. Franklin No. 15AP-1157, 2017-Ohio-4311, ¶ 22-23 quoting *Thomas v. Thomas*, 76 Ohio App.3d 482, 485, 602 N.E.2d 385 (10th Dist.1991). "[C]ohabitation, in the legal sense, implies that some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit a termination of [spousal support]. *Id.* Cohabitation is a question of fact for the trier of fact, and "[e]ach case must be evaluated on its own particular set of facts to determine whether cohabitation exists." *Moell* at 752.

{¶ 20} When considering the issue of whether a person is cohabiting, the fact finder should look to "three principal factors." These factors are "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Moell* quoting *Dickerson v. Dickerson,* 87 Ohio App.3d 848, 623 N.E.2d 237 (6th Dist.1993), fn. 2. The fact finder may consider "other relevant criteria" such as the "behavior and the intent" of the parties. *Id.*

{¶ 21} On appeal, husband argues that it is "undisputed" that wife was living with boyfriend "in the same house with [wife's] parents." While true, husband put forth no evidence that the two shared living expenses. To the contrary, wife testified that she paid her parents $500 per month, including utilities, to live there. She denied that boyfriend "helps" her with any expenses, though he, too, pays rent to her parents. Wife testified that boyfriend "pays his bills and he has his own rent [in the amount of $400] that he has to pay." When asked to confirm that she got "absolutely nothing" from boyfriend, wife testified, "I * * * told [boyfriend] before he

8.

moved up here [from Texas] that I would never again depend on a man again in my life." Husband did not challenge wife's testimony or present any evidence in rebuttal.

{¶ 22} Under these circumstances, we cannot say that the trial court abused its discretion in not finding that wife and boyfriend were cohabiting. Accordingly, husband was not relieved of his obligation to pay spousal support under the terms of the divorce decree, and his fourth assignment of error is found not well-taken.

### G. The trial court did not err in denying husband's motion to disqualify wife's counsel.

{¶ 23} Finally, husband alleges that the trial court erred in denying his motion to disqualify wife's trial counsel.

{¶ 24} Disqualification of an attorney is a drastic measure that should not be imposed unless it is absolutely necessary. *Spivey v. Bender,* 77 Ohio App.3d 17, 22, 601 N.E.2d 56 (6th Dist.1991).

{¶ 25} Such a motion requires a party to show that "all of the following applied: (1) [a] past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Sachs v. Phillips*, 6th Dist. Lucas No. L-05-1322, 2006-Ohio-5100, ¶ 14 quoting *Bunkers v. Bunkers,* 6th Dist. Wood No. WD-04-058, 2005-Ohio-1215, ¶ 4. We review a trial court's determination regarding a motion to disqualify for an abuse of discretion.

{¶ 26} "If there is no current or past attorney-client relationship, then the motion [to disqualify] should be denied." *Henry Filters, Inc. v. Peabody Barnes, Inc.,* 82 Ohio

9.

App.3d 255, 260, 611 N.E.2d 873 (6th Dist.1992). In deciding whether an attorney-client relationship exists, "the ultimate issue is whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." *Id.* at 261; *see also Cuyahoga County Bar Assn. v. Hardiman,* 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 10 ("The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client").

{¶ 27} Here, the evidence firmly established that, at no point, did husband ever believe that an attorney-client relationship existed between himself and Kennedy.

{¶ 28} Husband met with Kennedy for a "consultation" on one occasion. His "purpose" in meeting with Kennedy was "to find an attorney who could start the divorce proceedings and represent [him] in court." During their meeting, Kennedy's "main focus" was the children. She suggested that husband "file immediately for divorce" while wife was visiting her boyfriend in Texas "because that would put [wife] in the light as [having] abandoned her children." But, husband "did not want to do that" because, in his words, "my wife did not abandon our children. * * * [A]nd that's the reason why I did not hire [Kennedy]." At the conclusion of the meeting, Kennedy provided husband with a proposed fee agreement, and she suggested that he return it "ASAP while [wife] was out of town." Husband concluded that "that's not going to happen" and did not sign the agreement or have any further communications with her.

10.

{¶ 29} Because there are no facts to establish that an attorney-client relationship existed between husband and Kennedy, it was not an abuse of discretion for the trial court to deny husband's motion to disqualify. Accordingly, husband's fifth assignment of error is found not well-taken.

## H. Conclusion

{¶ 30} We find husband's assignments of error not well-taken, and the July 8, 2022 judgment of the Domestic Relations Division of the Ottawa County Court of Common Pleas is hereby affirmed. Husband is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.